GEORGE W. HOFFMAN et al., Appellants, v CAPITOL CABLEVISION SYSTEM, INC., Respondent.

Third Department, May 27, 1976

*Robert E. Heslin (Terrence F. Nieman* of counsel), for appellants.

*O'Connell & Aronowitz, P. C. (Neil H. Rivchin* of counsel), for respondent.

*Cohen & Berfield (Lewis I. Cohen* of counsel), for New York State Cable Television Association, *amicus curiae.*

*Joseph F. Cleary* and *Charles J. Tallent* for Niagara Mohawk Power Corp., *amicus curiae.*

LARKIN, J. The plaintiffs are owners in fee of real property in Latham, New York. In 1954 their predecessors in title granted to the Niagara Mohawk Power Corporation and to the New York Telephone Company "their respective successors and assigns, the right, privilege and authority to construct, maintain, operate, repair and replace lines, consisting of poles, conduits, guys, guy stubs, crossarms, wires and appurtenances for the distribution of electricity and messages upon, under, along or across the property which we own". On June 17, 1971 and November 1, 1971 Niagara Mohawk and New York Telephone, respectively, executed pole attachment agreements with defendant Capitol Cablevision Systems, Inc., whereby the latter was granted a "license" to install coaxial cable, for the transmission of cable television, on existing utility poles.

Both of the aforesaid agreements contained provisions requiring the defendant to receive permission from the landowner before installing facilities at the sites of any of the poles. The plaintiffs refused to give defendant permission to install the necessary cable and commenced this proceeding to enjoin defendant from making any entries on their land until an agreement had been reached or until condemnation pro-

ceedings had been held. Special Term denied the motion for a preliminary injunction and granted the defendant summary judgment dismissing the complaint, holding that Niagara Mohawk and New York Telephone had the right to apportion their easements.

As easements independent of the ownership or possession of any specific property, thus lacking a dominant tenement, the said easements owned by Niagara Mohawk and New York Telephone are easements in gross as opposed to easements appurtenant *(Antonopulos v Postal Tel. Cable Co.,* 287 NY 712; 17 NY Jur, Easements and Licenses, § 8). Because the utilities did not divest themselves of all control over their easements in their agreements with defendant, the interest acquired by the latter cannot be considered an assignment, such as is specifically permitted by the original grant of the easements. The transactions must rather be considered as attempts by the utilities to apportion their easements (see 5 Restatement, Property, § 493).

Whether an easement in gross is apportionable depends largely on whether it is viewed as exclusive as opposed to nonexclusive (5 Restatement, Property, § 493, subds [c] and [d]). Although exclusive easements are not generally favored by our courts (17 NY Jur, Easements and Licenses, § 33), the very nature of the said 1954 easements obtained by the utilities indicates that they were intended to be exclusive vis-à-vis the grantor. There is no claim that plaintiffs' predecessor had, at the time the easements were granted, any authority for, any intention to seek authority for, or any interest whatsoever in "the distribution of electricity and messages" via the said easements. Nor is there any indication that plaintiffs' predecessor or plaintiffs have at any time sought to treat the utility easements as nonexclusive by seeking to share with Niagara Mohawk or New York Telephone in "the distribution of electricity and messages" by the easements. "The construction which the parties have placed upon the grant may be considered, and is indeed of considerable importance in determining its meaning" (17 NY Jur, Easements and Licenses, § 32).

Plaintiffs claim, of course, that the additional use of the easements by defendant will be to the damage of their property. Even if we were to assume an additional burden, this would not be sufficient to defeat an apportionment of exclusive easements, as were created herein: "Though apportionability

may be to the disadvantage of the possessor of the servient tenement, the fact that he is excluded from making the use authorized by the easement, plus the fact that apportionability increases the value of the easement to its owner, tends to the inference in the usual case that the easement was intended in its creation to be apportionable. This inference is very strong in cases where an increase in use is the fact advantageous to the possessor of the servient tenement (5 Restatement, Property, § 493, subd c).

Although it appears that each of the utilities receives $5 per pole per year as an attachment fee from defendant, it is questionable whether the right to grant the licenses to defendant has increased the value of their easements. A strong argument can be made, however, for the proposition that the plaintiffs, possessors of the servient tenement, will be benefitted by the availability of cable television resulting from the increase in use of the easements sought by defendant herein. This proposition is buttressed by a letter dated August 5, 1975 from the attorneys for plaintiffs to defendant's attorneys in which plaintiffs request only free television service and attorneys' fees in return for allowing defendant to install its equipment.

We find no appellate authority in New York State applicable to the questions presented herein. In *Crowley v New York Tel. Co.* (80 Misc 2d 570) the court held that the defendant utility was empowered to permit the codefendant cable television corporation to use its facilities located on the property of the plaintiff landowner. The grant of easement to the utility, however, specifically allowed the telephone company "to convey to such other [utility] companies an interest in the rights granted under this agreement" *(Crowley v New York Tel., supra,* p 571). The easement was thus clearly apportionable by its terms. Similarly, in *Jolliff v Hardin Cable Tel. Co.* (26 Ohio St 2d 103, 104), the deed creating the easement which the court held apportionable to the cable television company was specifically conveyed to the utility "its successors, assigns, *lessees and tenants"* (emphasis supplied).

In *American Tel. & Tel. Co. of Mass. v McDonald* (273 Mass 324, 325), however, the easement extended only to the grantee "its successors and assigns for their own use and behoof forever". As in the instant case, and in contrast to *Crowley* and *Jolliff (supra),* there was no language in the grant of easement itself from which the court could infer a specific

intent that the easement be apportionable as opposed to assignable. In holding that the easement could be properly apportioned to a secondary user, a telephone company, the court noted: "There is no additional burden imposed by the grantee. Nothing granted to the plaintiff enables it to do anything which the original grantee could not have done" *(American Tel. & Tel. Co. of Mass. v McDonald, supra, pp 326-327)*. In the instant case defendant has not been given a license to install any new poles, which could be construed as imposing an additional burden on plaintiffs. The license merely permits defendant to install its equipment on existing poles. The license granted by Niagara Mohawk even limits this to the installation of one cable plus certain equipment.

Commercial easements in gross for utilities are particularly alienable and transferable *(Banach v Home Gas Co.,* 12 AD2d 373, mot for lv to app den 10 NY2d 707), and, as such, plaintiffs' predecessors were on notice of a broad view of the easement rights which they conveyed in 1954. As pointed out by Special Term, "[t]hat such a service [as cable television] was not thought of or discovered at the time of the grant of the easement is of no consequence. A sufficiently broad interpretation to meet progressive inventions is required. *(Holmes Elec. Protective Co. v Williams,* 228 NY 407, 420.)" (82 Misc 2d 986, 988.) We agree with Special Term that the licenses granted to defendant impose no burden on plaintiffs greater than that contemplated by the original easements. This is an additional reason for allowing the apportionment herein sought *(American Tel. & Tel. Co. of Mass. v McDonald, supra).*

We believe that the holding herein will serve the public interest. Cable television is a service which distributes by cable the programming of over-the-air television to subscribers. That the Federal Government has taken a strong interest in this service is evidenced by the adoption by the Federal Communications Commission of comprehensive rules governing cable television (47 CFR Part 76). In New York State, cable television is regulated and controlled pursuant to article 28 of the Executive Law. Section 811 of the Executive Law sets forth the Legislature's finding "that while * * * [cable television] operations must be subject to state oversight, they also must be protected from undue restraint and regulation so as to assure cable systems with optimum technology and maximum penetration in this state as rapidly as economically and technically feasible; that municipalities and the state

would benefit from valuable educational and public services through cable television systems". Obviously, to prohibit cable television companies from using existing utility easements, the most economically feasible and least environmentally damaging vehicles for installing cable systems, until compensation were paid to the landowner or condemnation proceedings were instituted, would increase the cost to and perhaps even deny to the public "these valuable educational and public services". The public interest clearly outweighs the harm, if any, to the property owner imposed by an additional utility using easements on his property within the scope of the burden contemplated by the original conveyances by which the easements were created.

Plaintiffs, and Niagara Mohawk, *amicus curiae,* argue that the language of the pole attachment agreements requires that the consent of plaintiff be received. The agreement with Niagara Mohawk, however, merely requires that defendant obtain such authorization "as may be required from the owner" and the agreement with New York Telephone requires only that defendant obtain "all necessary permits and consents * * * from the owners of the property". We have concluded that no authorization is "required" and that no consent is "necessary".

We hold that the easements held by Niagara Mohawk and New York Telephone in plaintiffs' property are exclusive easements in gross which were properly apportioned to defendant without compensation to plaintiffs; and, notwithstanding any language contained in the agreements between the utilities and defendant, we further hold that defendant may exercise its rights under said agreements without the consent of plaintiffs.

Special Term properly denied plaintiffs' application for a temporary injunction and granted defendant's application for summary judgment dismissing the underlying action.

The order should be affirmed, without costs.

KOREMAN, P. J., SWEENEY, KANE and MAHONEY, JJ., concur.

Order affirmed, without costs.