No. 14578

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

———————————

JAMES MACPHERSON et al.,

Plaintiffs and Respondents,

vs.

FRANKLIN R. SMOYER et al.,

Defendants and Appellants.

———————————

Appeal from: District Court of the First Judicial District,
In and for the County of Lewis and Clark.
Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

For Appellants:

Petaja, Smoyer and Berry, Helena, Montana
Jeanette Berry argued, Helena, Montana

For Respondents:

Hughes, Bennett, Kellner and Sullivan, Helena,
Montana
John Sullivan argued, Helena, Montana

———————————

Submitted: November 19, 1980

Decided: DEC 30 1980

Filed: DEC 30 1980

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiffs brought this action in the District Court of the First Judicial District seeking injunctive relief and to quiet title to real property. Defendants counterclaimed for injunctive relief and to quiet title to the property in question. The District Court entered judgment in favor of plaintiffs and denied defendants' counterclaim in its entirety. From this judgment defendants appeal.

At issue in this appeal is a small tract of land, perhaps no larger than 25 feet in length. Easement issues, therefore, make up the bulk of the argument. Property as well as civil procedure issues were presented for review.

The case is a dispute among neighbors who are owners of certain property on the north face of a hill located on the south boundary of Helena, Montana. Specifically, the property includes Lots 11 through 23 of Block 41 of the Corbin Subdivision of the City of Helena; most of the closed and vacated north-south alley to the west of these Lots 11 through 23; Lots 24 through 36 of Block 42 of the Corbin Subdivision; and the closed and vacated Cooke Street located between Lots 11 through 23 of Block 41 and Lots 24 through 36 of Block 42. Within this tract of land there is a road providing access to all residences on the hill.

The following facts were derived from the extended findings of fact made by the District Court.

The only plat on record is the Corbin Subdivision recorded in Lewis and Clark County. The original owners, the Schillers, petitioned the City of Helena for vacation of a portion of Cooke Street and the north-south alleys located within the 400 block of Cooke Street.

In 1952 the City of Helena granted the petition by means of a resolution. The resolution vacated and discontinued that portion of Cooke Street located within the disputed area, subject to a requirement that no building be built thereon and also subject to the rights of any public utility company, including the City, to use the land vacated for servicing the area and adjacent area in the City of Helena.

In 1958, the Schillers quitclaimed to the City of Helena all of their "rights, title, interest, claim and demand" to all the vacated alleys and the portion of vacated Cooke Street located within the exterior boundaries of Blocks 41 and 42. The Schillers then repetitioned for the closing and vacation of the north-south alleys and the portion of Cooke Street located within Blocks 41 and 42. This petition was granted effective December 29, 1958, by the City of Helena. The 1958 resolution did not contain any conditions or requirements which forbids the construction of buildings on the vacated areas.

In 1960 the Schillers conveyed to plaintiff, James Macpherson, the property in question. The land at that time was not developed and served as horse pasture.

In 1961 the Macphersons built a house at the highest point on the property in question, marked as "M" on the diagram. Macphersons built a switchback road starting at the northeast corner of Lot 36, Block 42, which led to their house.

From 1963 through 1970 Macpherson sold and conveyed other tracts of land within this block to several other persons. Through a series of conveyances, Macpherson attempted to retain an easement on an access road to his

-3-

house. In 1970 Macpherson sold and conveyed land to the Ecks, predecessors in interest of defendants Smoyer of Lots 21 through 23. Lots 21 through 23 have a steep east to west slope, with the higher ground located to the east. The east 25 feet of these lots, the property in dispute on which the access road is located, is a bench-like area which is approximately on the same level as that on which the Macphersons' house is built. Immediately to the west of the bench-like area, the property drops off steeply to the west.



Macphersons offered to sell the Ecks the west 100 feet of Lots 21 through 23, Block 41. A buy-sell agreement was entered into. Later, it was discovered that because of recent ordinance changes the sale, as proposed in the buy-sell agreement, would not leave the Ecks with sufficient lot

to allow construction of a house thereon. Macphersons agreed to convey to the Ecks the east 25 feet of Lots 21 through 23 Block 41, and to reserve thereon an easement for Macphersons to ingress and egress for driveway purposes.

The deed for the sale was recorded. Plaintiffs did not intend to convey to the Ecks any part of closed and vacated Cooke Street to the east of Lots 21 through 23, Block 41, and this was known to and understood and accepted by the Ecks.

During the Ecks' ownership of the tract of land now owned by defendants, they occasionally drove up the switch-back road, beyond the point at which it first entered into plaintiffs' property at the west end of Lots 28 and 29, Block 42. The Ecks' activity in this regard was to determine whether it would be possible to have cement trucks pour concrete for the Ecks' planned residence from a point off plaintiffs' driveway on the east 25 feet of Lots 21 through 23. Stanley Eck understood that he needed plaintiffs' permission to drive up the road beyond the point at which it first entered into plaintiffs' property at the west end of Lots 28 and 29, Block 42, and he sought and obtained such permission from plaintiffs.

On January 30, 1973, the Ecks conveyed the tract of land to Ervin and Katherine Chester. On September 19, 1975, the Chesters conveyed to defendants, Franklin R. and Ann L. Smoyer, husband and wife, Lots 21 through 23, Block 41, all of the closed and vacated alley to the west of said Lots 21 and 22 and the east one-half of the closed and vacated alley to the west of said Lot 23.

At the time of defendants' purchase of the property, there were no structures located thereon. Defendants subse-

quently constructed a residence on this property, which was first occupied by defendants in June 1976.

Access to defendants' residence is by means of an asphalt driveway constructed by defendants during the summer of 1976 on the west portions of Lots 21 and 22, Block 41, and on the east portion of the closed and vacated alley to the west of said lots. Defendants' driveway leads from the switchback road to a two-car garage located in the west ground floor portion of defendants' residence.

The switchback road, from the point at which it first enters onto plaintiffs' property at the west end of Lots 28 and 29, Block 42, to the point at which it dead-ends at plaintiffs' residence, has, since the time of its construction in 1961, been considered by plaintiffs to be their private driveway. Since 1961 all of the maintenance and improvement of this portion of the road has been at the sole discretion and expense of plaintiffs. In 1973 plaintiffs placed a post-and-chain gate on this portion of the road.

During the summer of 1976 defendants drove their vehicles up the switchback road to the east of their asphalt driveway and residence and onto plaintiffs' property. Defendants would then negotiate the u-turn located within the lots, would proceed along the road to the west and would park and leave their vehicles in the area where the road crosses the east 25 feet of Lots 21 through 23.

Defendants parked their vehicles on the disputed property, located and marked as "A" on the diagram. Plaintiffs made repeated requests to defendants to remove their vehicles. Defendants continued to park their vehicles in this area.

Plaintiffs filed a declaratory action to determine the nature of the property interests of the disputed area. Defendants answered and counterclaimed.

Prior to the conveyance of the land to the Ecks in 1970, plaintiffs openly and continuously used and maintained a large portion of the area of closed and vacated Cooke Street between Lots 21 through 23, Block 41, and Lots 24 through 26, Block 42, for driveway purposes and as a means of ingress and egress to their residence. Prior to defendants' filing of a counterclaim, there was no challenge or obstruction or any contest on the road.

Defendants raise numerous issues on this appeal, creating the appearance of a complex land dispute. Upon close review we find one issue will dispose of the entire property dispute:

Whether the reserved easements in the deed from the plaintiffs to the Ecks, the predecessors in interest of defendants, conclusively establish that defendants have no right of access over plaintiffs' private driveway.

We limit our consideration of this matter to the deed from plaintiffs to the Ecks, by which plaintiffs first conveyed the land now owned by defendants. This instrument and its interpretation is controlling. The Eck deed contains two reserved easements in favor of plaintiffs, as first parties. The reserved easements provided as follows:

> "excepting and reserving out of the granted premises to the First Parties, their heirs and assigns, the following:

> "An easement, right-of-way and right of private driveway upon and over all of the East Twenty-five Feet (E 25') of each of said Lots 21, 22 and 23, for the exclusive use as a driveway and means of ingress and egress by the First Parties, their heirs and assigns, together with

the use, maintenance, repair and/or reconstruc-
tion of the private driveway presently located
on the East Twenty-five Feet (E 25') of each
of said Lots 21, 22 and 23; and

"An easement, right-of-way and right of ingress
and egress over and upon a certain strip of
land Twenty Feet (20') in width following the
present access roadway furnishing ingress and
egress to all of the lands of the First Par-
ties, running over and across the premises
herein conveyed, for the purpose of using (in
common with Second Parties, their heirs and
assigns), maintaining, repairing and improving
said roadway which presently crosses said tract
and provides access to the tract herein con-
veyed and access to the lands of the First
Parties, together with the right in the First
Parties, their heirs and assigns, to maintain
and/or reconstruct said roadway."

The reserved easements are binding on defendants, as
they are the successors in interest of the Ecks. Defendants
have no right to use the access road known as Cooke Lane or
South Cooke located within the exterior boundaries of the
property at which point the access road first crosses onto
plaintiffs' retained property at the west end of Lots 28 and
29 of Block 42. Upon a complete review of the record, we
come to that conclusion based on the following considera-
tions:

The Document

1. The reserved easements in the deed from plaintiffs
to the Ecks are reservations and exceptions out of the
granted premises and do not expressly provide anyone with a
right-of-way over the land retained by plaintiffs.

2. Defendants' claim of a right to use the access road
beyond the point it first crosses plaintiffs' property at
the west end of Lots 28 and 29, Block 42, is inconsistent
with the reading of the first reserved easement in the deed.
The easement expressly reserves "all of the east 25 feet of
[defendants'] property as a private driveway . . . the

exclusive use as a driveway and means of ingress and egress to the property retained by [plaintiffs] to the east." Defendants are excluded from the use of this area of the driveway. The east 25 feet of defendants' property is for plaintiffs' "exclusive use."

3. The first reserved easement in the deed from plaintiffs to the Ecks does not contain any provisions for "in common" use of the access road beyond plaintiffs' property for other persons. This is in stark contrast to the existence of an express provision for an "in common" use in the second reserved easement in the Eck deed relating to the certain strip of land located on the west end of Lot 21, which was clearly intended to insure access on the road for residents who live higher up on the hill.

4. Section 70-1-516, MCA, provides that a reservation out of the grant of properties is to be interpreted in favor of the grantor.

The Intent of the Parties

1. Stanley Eck, who originally handled the negotiations with plaintiffs which led to the drafting and execution of the "Eck" deed, understood the reservation to mean that he needed plaintiffs' permission to travel on the access road after the point where the road first entered on plaintiffs' property at the west end of Lots 28 and 29, Block 42. Eck, in fact, asked for and received permission from plaintiffs before driving on the road beyond that point. This layman's understanding of his limited property interests in that small parcel of land is consistent with the readings of the reservation, the intent of the grantor (plaintiffs), the physical location of the property and other findings made by the District Court. Here, the parties,

by their conduct, intended to consider it an exclusive easement for plaintiffs. State By and Through Montana, Etc. v. Cronin (1978), ___ Mont. _____, 587 P.2d 395, 35 St.Rep. 1798; Larson v. Burnett (1972), 158 Mont. 421, 492 P.2d 921.

2. The expressed intent of plaintiffs in drafting the deed was that the area was reserved for a private driveway for their exclusive use.

### The Location of the Area and Physical Facts

Our reading of the first reserved easement is consistent with the physical facts of the property. The east 25 feet of defendants' property is geographically a bench-like extension of plaintiffs' property. The reason for this is that at the west end of the east 25-foot portion of defendants' property, the ground level drops sharply to the west to the point where defendants' residence is located in the western portion of their lot. In addition, the road dead-ends at the plaintiffs' residence, which is located at the highest point of the property in question. These facts, taken together, are consistent with the conclusion that the "in common" use of the switchback road ends where the paving ends, at the point at which the road first enters onto plaintiffs' retained property at the west boundary of Lots 28 and 29, Block 42.

Defendants' assertions that they own or have an interest in that parcel of land by alternative property theories do not meet this Court's agreement. The litigation in this case is clear. The issue surrounds the interpretation and reading of the deed with the facts applied to that reading. We find no merit in the other property theories advanced to this Court and shall not address them specifically only to uphold the District Court's extensive and proper findings of fact and conclusions of law.

The residential hill in dispute has been overburdened by claims and counterclaims of alternative property theories that surpass most complex land cases before this Court. There is no need here to further impose that burden on this small tract of land.

Among numerous alleged errors raised by defendants during the course of this litigation, this Court finds it imperative to address one in particular:

Whether defendants' affidavits of disqualification of the district judge, which were filed after the entry of the district judge's findings of fact and conclusions of law, prevented the judge from entering judgment in favor of plaintiffs in accordance with the findings and conclusions.

Defendants contend that they effectively disqualified the district judge from entering judgment in this case by the filing of affidavits of disqualification after entry of findings of fact and conclusions of law in favor of plaintiffs. In addition, defendants suggest that the judge should not have accepted jurisdiction of this case because of certain business dealings which the judge and his wife have had with James Macpherson and with the attorney for plaintiffs, John Sullivan.

We find that the filing of the affidavits was untimely and that the allegations of bias were without merit. Briefly, the record reflects the following facts:

The district judge entered his findings and conclusions on September 18, 1978, at which time he directed plaintiffs "to prepare a judgment in accordance with the . . . Findings of Fact and Conclusions of Law, and to present the same to the Court on or before the 26th day of September, 1978."

On September 25, 1978, defendants filed an affidavit of disqualification of the district judge, together with a motion for disqualification which stated that it was being made "pursuant to Supreme Court Rule, 34 State Rep. 26." The affidavit of disqualification was signed by defendant Franklin R. Smoyer and was certified to have been made in "good faith" by counsel for defendants, Charles E. Petaja and J. Mayo Ashley. The affidavit alleged that Smoyer had observed actions by the district judge throughout the course of the trial "that indicated that he was biased and prejudiced against [defendants] and in favor of Plaintiffs."

On September 27, 1978, the district judge held an in-chambers conference with counsel for both parties to discuss the effect of defendants' affidavit of disqualification. The September 27 conference was not reported, but the topics discussed were mentioned during a similar conference the next day which was reported. In addition, counsel for defendants conceded that they themselves did not agree with their clients' allegations of bias and prejudice on the part of the judge, noting that they had "tremendous personality problems with [their clients]."

On September 28, 1978, defendants pointed out that the affidavit of disqualification was an attempt to disqualify the judge "for cause," and that under subsection 6 of the Supreme Court's new disqualification rule, a hearing would have to be held on the allegations contained therein before a judge assigned by the Chief Justice of the Supreme Court. Plaintiffs argued that the attempted disqualification was untimely and that the court had jurisdiction to enter judgment under the decision in In re Miller's Estate (1924), 71 Mont. 330, 229 P. 851. Plaintiffs filed a motion for entry of judgment on October 2, 1978.

On October 31, 1978, counsel for defendants initiated an unscheduled, unnoticed _ex parte_ conference with the district judge, at which time they advised the judge that they had "discovered" (in the public records of Lewis and Clark County) certain other business affairs that affected their ability to receive a fair trial.

On November 1, 1978, the district judge entered judgment. It was then filed with the clerk of court and notice of entry was given by both the clerk of court and counsel for plaintiffs. Shortly thereafter, the court filed a minute entry stating: "The motion for entry of judgment in the above-entitled matter was granted this day. The judgment having been entered, the Court withdraws from further proceedings in this cause." Later that afternoon, defendants filed a "Supplemental Affidavit for Disqualification of Judge," in which they set forth other transactions which they contended demonstrated a "conflict of interest" on the part of the judge, which "led to bias and prejudice against [defendants] during the course of this litigation."

Defendants filed their disqualification as one "for cause" under subsection 6 of this Court's new disqualification rule--which was promulgated on December 29, 1976, to be effective for actions filed on or after March 1, 1977. This case was filed on February 15, 1977, prior to the effective date of the new disqualification rule. The controlling disqualification rule, therefore, was former section 93-901, R.C.M. 1947.

In addition to the factors which amount to an automatic disqualification under subdivisions (1) through (3) of section 93-901, R.C.M. 1947, subdivision (4) provides that a party may disqualify a district judge upon making and filing

an affidavit that the party ". . . has reason to believe, and does believe, he cannot have a fair and impartial hearing or trial before a district judge by reason of the bias or prejudice of such judge." Under this provision, a judge could be disqualified even after trial to prevent him from ruling on post-trial motions, such as a motion for a new trial. State v. District Court of Fourth Judicial Dist. (1962), 140 Mont. 447, 450, 373 P.2d 314, 316.

Nevertheless, this Court has recognized an exception for the entry of judgment in cases where the disqualification is attempted after the decision in a case but prior to the entry of judgment pursuant to that decision. Thus, in In re Miller's Estate, supra, one of the issues was whether "the district judge, having been disqualified after the verdict, was without authority to render judgment." This Court held:

> "This court decided in State ex rel. Carleton v. District Court, 33 Mont. 138, 8 Ann. Cas. 752, 82 Pac. 789, that an affidavit imputing bias and prejudice may be filed after a trial has been had and while a motion for a new trial is pending, at any time before the date set for the hearing of such motion. In so far as that decision permits a change of judge, when application is made under Section 8868 [section 93-901, R.C.M. 1947] prior to the date set for a hearing upon a motion for a new trial upon the ground that it is <u>pro hac vice</u> a proceeding independent of the trial of the cause on the merits, we have no particular fault to find with it. <u>The rule there announced may not, however, be extended to permit the filing of a disqualifying affidavit after verdict and prior to the entry of judgment. The rendition of judgment is too much a part of the trial of the action on the merits to be characterized as a separate, independent proceeding in the sense that the term is used in the foregoing section. The trial court committed no error in disregarding the affidavit and rendering judgment.</u>" 71 Mont. at 336, 229 P. at 852. (Emphasis added.)

The rule of <u>Miller's Estate</u> is applicable here. The findings and conclusions entered by the district judge,

-14-

prior to the filing of the affidavit of disqualification, expressly directed that a judgment be prepared "in accordance with" the findings and conclusions. Rule 58, M.R.Civ.P., required that where the court directs entry of judgment for relief other than money or costs, "the judge shall promptly settle or approve the form of the judgment and direct that it be entered by the clerk." Under these circumstances the judgment was as much a part of the findings and conclusions as the judgment required by the jury's verdict in Miller's Estate. Accordingly, although the disqualification prevented the district judge from ruling on post-trial motions under Rules 59 and 60, M.R.Civ.P., and from withdrawing the findings and conclusions previously entered, it was not effective to prevent entry of judgment in favor of plaintiffs in accordance with the findings and conclusions entered on September 18, 1978.

We find that defendants' filing of an affidavit for an attempted disqualification of the district judge was untimely made. The district judge was correct in entering his judgment and withdrawing from the case.

This case is, from its inception, a splendid example of an abuse of the judicial system. The District Court was burdened by excessive arguments and procedures many times the amount that actually should have occurred. This Court was also burdened by briefs of extraordinary length. However, plaintiffs' request that we impose and assess a penalty against defendants in this case is without merit. The application of Rule 32, M.R.App.Civ.P., is not applicable as there were legitimate issues regarding deed interpretation and construction of real property law presented.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-16-