673 P.2d 1048

Denny LATHAM, Plaintiff-Appellant,

v.

Harold D. GARNER and Betty L. Garner, husband and wife; and John Doe Garner, Defendants-Respondents.

No. 13435.

Supreme Court of Idaho.

Jan. 26, 1983.

On Rehearing Dec. 28, 1983.

Danny J. Radakovich of Rapaich & Knutson, Lewiston, for plaintiff-appellant.

J. Ray Cox, Jr. of Cox & Bean, Coeur d'Alene, for defendants-respondents.

BAKES, Justice.

Plaintiff appellant appeals from a lower court decision that a roadway easement over plaintiff's servient estate belonged exclusively to the defendant respondents, enjoining plaintiff from either using the road or interfering with the defendants' use.

The uncontroverted facts before the lower court were that the defendant respondents have owned certain real property located in Kootenai County, Idaho, since 1962. Until 1968, defendants' only access to their property was through privately owned adjoining land, on an inconvenient and sometimes impassable road. On March 29, 1968, defendants purchased right-of-way easements from Madeline Leischner and Earl Lucas for purposes of a proposed roadway between defendants' property and the county road. The defendants paid $500 to Leischner and $40 to Lucas for the easements and incurred legal expenses in preparing the easement documents.

The documents were essentially identical: they were entitled "easement"; they described the roads in detail, containing words of grant; and, they specifically provided that the easements and rights-of-way granted to the defendants were "exclusively for their use, and unto their successors and assigns forever." The location of the easements is undisputed.

Defendants began and substantially completed construction of the road during summer and fall of 1968, at their own expense. Upon completion of the road they erected a chain barrier and posted a sign on the road designating the road as private, to be used by permission only. Defendants at all times maintained the road and kept it in a travelable condition.

Plaintiff, in 1973, purchased the property formerly owned by Madeline Leischner through which the longest portion of the aforementioned easements runs. The trial court found that around the time of purchase, plaintiff and defendant Harold Garner conversed about the easement. At this time, Harold Garner advised plaintiff that an agreement for joint use of the road could be reached if plaintiff would reimburse him for part of the construction cost and share in maintenance costs. Alternatively, Garner offered to dedicate the road to the county if plaintiff brought it up to county specifications. Plaintiff refused both offers and took the position that he was entitled to use the road without contribution. In 1977, plaintiff acquired the property owned by Earl Lucas over which the balance of defendants' easement ran. Thus, when this action commenced plaintiff owned both servient estates; for ease of reference, the two easements will be referred to as one.

Testimony before the trial court indicated that plaintiff, among others, used the road, but upon detection by defendant, was ordered to stop such use. Plaintiff and defendant resorted to blows over the disputed right to use the road when plaintiff attempted to remove a chain across the road with his pickup truck in June, 1977. Plaintiff filed this Action to Quiet Title on October 20, 1977.

The trial court determined that the easement was granted for the exclusive use and benefit of the defendants and enjoined plaintiff "from interfering in any manner with the exclusive use of the road by the ... Defendants ...." From this judgment in favor of defendants, plaintiff appeals.

The primary question to be decided on appeal is whether the trial court was correct in concluding that the instruments granting the easement to defendants conveyed an easement solely for defendants' use, to the exclusion of the owner of the servient estate, the plaintiff herein. To reach that decision, we must first determine whether an easement which excludes use by the owner of the servient estate is an interest recognized by law. We are cited to no

Idaho cases directly on point, nor do we find any.

 We begin with the observation that an exclusive easement is an unusual interest in land; it has been said to amount to almost a conveyance of the fee. *Mitchell v. Land,* 355 P.2d 682, 685 (Alaska 1960); *City of Pasadena v. California-Michigan Land & Water Co.,* 17 Cal.2d 576, 110 P.2d 983, 985 (1941); *Keeler v. Haky,* 160 Cal. App.2d 471, 325 P.2d 648, 651 (1958); 2 Thompson, Real Property § 426 (1980).[1] The grant of an exclusive easement conveys unfettered rights to the owner of the easement to use that easement for purposes specified in the grant to the exclusion of all others. Because an exclusive grant in effect strips the servient estate owner of the right to use his land for certain purposes, thus limiting his fee, exclusive easements are not generally favored by the courts. *See Hoffman v. Capitol Cablevision System, Inc.,* 52 A.D.2d 313, 383 N.Y.S.2d 674, 676 (1976). Nevertheless, if parties agree to do so, exclusive easements can be created. In *M.G.J. Corp. v. City of Houston,* 544 S.W.2d 171 (Tex.Civ.App.1976), the court was faced with the question whether the plaintiff's easement in a parking lot excluded use by successors of the grantors, the defendants. The deed in question in *M.G.J. Corp.* provided that the tract "shall be set aside [and] used exclusively by the grantee herein . . . ." The Texas appellate court held that plaintiffs owned an exclusive easement and that they were entitled to the free and undisturbed use of their property for the purposes of the easement to the exclusion of the owner of the fee.

The Supreme Judicial Court of Massachusetts was faced with a similar question in *Butler v. Haley Greystone Corp.,* 352 Mass. 252, 224 N.E.2d 683 (1967). In *Butler,* a subdivider granted beach easements for the benefit of a certain group of lots. When the subdivider attempted to grant easements in favor of another section of lots, the first lotholders sought to quiet title in themselves. The court held that the intention of the parties sufficiently showed that the original beach easement was to exist exclusively in the first lot owners and that the grantor reserved no right to grant easements in favor of any other parcels.

Finally, in *Hoffman v. Capitol Cablevision System, Inc.,* 52 A.D.2d 313, 383 N.Y. S.2d 674 (1976), defendant easement holders attempted to apportion their easement in gross. Defendants owned an easement to construct and maintain power poles and wires for the distribution of electricity and messages. The court determined that the very nature of the easements indicated that they were intended to be exclusive *vis-a-vis* the grantor. *Id.* 383 N.Y.S.2d at 676. The court affirmed the easement owner's exclusive right to distribute electricity and messages across the servient estate and allowed defendants to apportion their right.

These cases illustrate that exclusive easements are recognized servitudes on land which may be created when the parties so

1. Plaintiff argues and a few courts have stated that an exclusive easement is tantamount to a fee, and therefore inconsistent with the nature of an easement. *E.g., Duke v. Pine Crest Homes, Inc.,* 358 So.2d 148 (Ala.1978); *George v. Coombes,* 278 Or. 3, 562 P.2d 200 (1977); *Van Natta v. Nys,* 203 Or. 204, 278 P.2d 163 (1954), *overruled* on other grounds, *Garza v. Grayson,* 255 Or. 413, 467 P.2d 960 (1970); *Weggeland v. Ujifusa,* 14 Utah 2d 364, 384 P.2d 590 (1963). Indeed, Thompson, in his work on real property, states that "where the whole exclusive use of a thing is obtained, the right becomes an interest, and there is no longer an easement." 2 Thompson, Real Property § 425, p. 646 (1980).

A careful reading of this passage, however, shows that an interest ceases to be an easement only where the *whole* exclusive use of a thing is conveyed. *Accord,* Restatement of Property, § 471, comment e (1944), where it is stated that "[a] conveyance which conveys the privilege of exclusive use for *all purposes* of all or part of the conveyor's land conveys an estate in the land." (Emphasis added.) Where less than the whole exclusive use is created in another, *i.e.,* where privilege of use is for a particular purpose, the grant retains its easement status and the grantor retains the rights and privileges of a fee owner that are not inconsistent with the easement conveyed. "Whether there exist privileges of use inconsistent with that conveyed depends upon the pervasiveness of the privilege created." Restatement of Property, § 471, comment e (1944).

intend. Many other cases acknowledge the possibility that an easement may exclude use by the servient estateholder, but have construed the easements involved to be non-exclusive in nature. *See, e.g., Mitchell v. Land,* 355 P.2d 682 (Alaska 1960); *City of Pasadena v. California-Michigan Land & Water Co.,* 17 Cal.2d 576, 110 P.2d 983 (1941); *Holbrook v. Telesio,* 225 Cal.App.2d 152, 37 Cal.Rptr. 153 (1964); *Barnard v. Gaumer,* 146 Colo. 409, 361 P.2d 778 (1961); *Wiggins v. Lykes Bros., Inc.,* 97 So.2d 273 (Fla.1957); *Folk v. Meyerhardt Lodge No. 314 F. & A.M.,* 218 Ga. 248, 127 S.E.2d 298 (1962); *Lindhorst v. Wright,* 616 P.2d 450 (Okl.App.1980). The reason most often cited for finding a particular easement non-exclusive is that the granting instrument does not clearly and specifically provide for exclusivity in the dominant estate.[2] *E.g., Holbrook v. Telesio, supra; Mitchell v. Land, supra.* "No intention to convey such a complete interest can be imputed to the owner of the servient tenement in the absence of a clear indication of such an intention." *City of Pasadena v. California-Michigan Land & Water Co., supra* 110 P.2d at 985, *citing Reiver v. Voshell,* 18 Del.Ch. 260, 158 A. 366 (1932).

▮▮▮ Our cases are clear that the legal effect of an unambiguous written document must be decided by the trial court as a question of law. *See J.R. Simplot Co. v. Chambers,* 82 Idaho 104, 350 P.2d 211 (1960); *Ohms v. Church of the Nazarene,* 64 Idaho 262, 130 P.2d 679 (1942). If, however, the instrument of conveyance is ambiguous, interpretation of the instrument is a matter of fact for the trier of fact. *See Rutter v. McLaughlin,* 101 Idaho 292, 612 P.2d 135 (1980).

The granting clause of the Easement in question provides that "the First Parties have this day bargained and sold, and by these presents do hereby grant, bargain, sell, convey, transfer and deliver unto the Second Parties [the defendants], a perma-

nent easement and right of way, for the following purposes, namely: [to build and maintain a roadway]." However, the *habendum* clause of the Easement later provides:

"TO HAVE AND TO HOLD the said easement and right of way unto the Second Parties, exclusively for their use, and unto their successors and assigns forever."

The trial court, in its Memorandum Decision, stated:

"It would ... appear to be the general rule that the grant of an exclusive easement in effect passes the fee simple title to the grantee; and in this case all the elements of exclusiveness are present as well as the words of conveyance and description."

The court concluded: "[T]he rights of the defendant[s] to the exclusive use of the roadway to the exclusion of all others, including the plaintiffs, should be quieted and confirmed in them." Although somewhat unclear, it appears from the above statements that the trial court considered only the language in the instrument and held as a matter of law that the defendants had the exclusive right to use the easement. We conclude, however, as set forth below, that the Easement is ambiguous and should have been interpreted as a question of fact rather than as a matter of law.

▮ The mere use of the word "exclusive" in creating an easement is not, in and of itself, sufficient to preclude use by the owner of the servient estate. The Supreme Court of Oregon, in *George v. Coombes,* 278 Or. 3, 562 P.2d 200 (1977), was faced with the following provision: "[T]he [defendants], their heirs, executors and assigns would have 'a perpetual and exclusive easement for roadway purposes.'" *Id.* 562 P.2d at 200. The Oregon court acknowledged that the literal language in the grant, "without more, would ordinarily, but not necessarily, be held to mean that defend-

---

**2.** Another reason given by courts refusing to find that an easement excludes use by the grantor is that such an interest in effect is a fee simple. To create an exclusive right in the easement holder is thus to give a greater interest than that which may have been intended by the grantor. *See* authorities cited in n. 1, *supra.*

ants' right to use the easement was exclusive in the sense that it could not be used by others, including the plaintiff." *Id.* 562 P.2d at 202. However, the court considered evidence other than the instrument and found that the servient estate owner was not prohibited from using the easement because the parties did not intend to make the easement exclusive in the grantees.

The Utah Supreme Court similarly interpreted a like clause in *Weggeland v. Ujifusa,* 14 Utah 2d 364, 384 P.2d 590 (1963). The instrument in *Weggeland* provided that the plaintiff was to receive "an exclusive right of way for roadway purposes as a private driveway," along the edge of defendant's land. The court determined that to make the easement exclusive in the plaintiff would burden the servient estate to a greater degree than was intended or necessary to satisfy the purpose of a private driveway.

An instrument which is reasonably subject to conflicting interpretation is ambiguous. *See Rutter v. McLaughlin,* 101 Idaho 292, 293, 612 P.2d 135, 136 (1980). The phrase "exclusively for their use" lends itself, without contortion, to a number of interpretations. The instrument could be interpreted as (1) the grant of an easement right of way to the grantee, the defendants herein, to the exclusion of all others, except the grantor; or (2) the grant of an easement right of way excluding all others, including the grantor; or, (3) as the grant of a fee simple estate to the grantee.[3] Thus, the instrument is reasonably subject to conflicting interpretations and as such is ambiguous.

When an instrument is ambiguous in nature, the intention of the parties as reflected by all of the circumstances in existence at the time the easement was given must be considered in construing the granting instrument. *Quinn v. Stone,* 75 Idaho 243, 250, 270 P.2d 825, 829–30 (1954); *see Cusic v. Givens,* 70 Idaho 229, 215 P.2d 297 (1950). Therefore, the trial court should have considered extrinsic evidence of the circumstances and intentions of the original parties to the easement. We remand to the trial court to make a finding of fact regarding the intentions of the parties to the instrument of conveyance. In making such a factual finding, the trial court must consider all of the extrinsic evidence in the record to determine what the intentions of the parties were when they executed and accepted the instrument. *See Hogan v. Blakney,* 73 Idaho 274, 251 P.2d 209 (1952); *Campbell v. Weesbrod,* 73 Idaho 82, 245 P.2d 1052 (1952) (court must seek and give effect to intention of parties): *see also, Gardner v. Fliegel,* 92 Idaho 767, 450 P.2d 990 (1969). The parties should be permitted to reopen and introduce any additional relevant evidence on the question of intent that they may have.[4] *See Andrews v. Grover,* 66 Idaho 742, 168 P.2d 821 (1946); *Idaho Lumber & Hardware Co. v. DiGiacomo,* 61 Idaho 383, 102 P.2d 637 (1940); *Dybvig v. Willis,* 59 Idaho 160, 82 P.2d 95 (1938); *accord, Stecklein v. Montgomery,* 98 Idaho 671, 570 P.2d 1359 (1977). The following factors, among others, should be considered. The granting instruments consistently referred to the interests granted as an easement or roadway, indicating that the grantors did not intend to grant any greater interest than that stated. Additionally, the roadway built by the defendants bisects the upper twenty acres of plaintiff's property. If Madelaine Leischner, in granting the original easement, had intended that defendants have the right to exclude all others, including herself, from use of the roadway, she would have rendered one portion

---

3. The trial court construed the Easement consistently with the third alternative, stating that it "appear[s] to be the general rule that the grant of an exclusive easement in effect passes the fee simple title to the grantee ...." The trial court, however, found it unnecessary to hold that the defendants obtained a fee simple interest since they claimed only an "exclusive easement to the exclusion of everyone, including the grantor."

4. An affidavit of Madeline Leischner presented in support of plaintiff's motion to set aside the judgment indicated that Mrs. Leischner never intended that she or her successors in interest be excluded from use of the easement granted to defendants.

of her upper twenty acre parcel inaccessible from the other portion.

We reverse and remand to the trial court to reconsider all the evidence, and any new evidence which the parties may have, and make new findings of fact and conclusions of law and enter judgment thereon. *See In re Lewis,* 97 Idaho 299, 543 P.2d 852 (1975); *Perry Plumbing Co. v. Schuler,* 96 Idaho 494, 531 P.2d 584 (1975).

Costs to appellant. No attorney fees.

McFADDEN, J. (Retired), concurs.

BISTLINE, Justice, concurring in part.

Appellate disposition of the single issue presented has been particularly troublesome to the Court, making it appropriate that I briefly delineate the reasons which bring me to join Justice Bakes in reversing, although I find merit in the views expressed in the dissents of Justice Donaldson and Justice Shepard. It is proper that we should also be heavily influenced by the views of Judge Towles, which are set forth verbatim in Justice Donaldson's dissenting opinion. Judge Towles pointed to authority standing for the proposition that a grant of an exclusive easement does not merely create an easement but is a "grant in fee." His view was that although he was justified in holding that here the fee passed rather than that an easement was created, it was permissible to recognize the creation of an exclusive easement solely to protect the possibility of reversion in the event of abandonment or relinquishment.

The various opinions discuss the issue of ambiguity of the instrument. Other ambiguity upon which the Court is in disarray has to do with the decision of Judge Towles, of which it is said by Justice Bakes that Judge Towles simply made a legal interpretation of an instrument ambiguous on its face, with which Justice Donaldson disagrees, finding it "clear" that Judge Towles' decision was based upon a consideration of "the circumstances and evidence as a whole." Justice Shepard joins that view of Justice Donaldson, and points to that portion of Judge Towles' decision giving mention to the facts that defendants constructed the road, maintained the roadway at considerable expense, and attempted to exclude all others by means of chains or gates. Justice Shepard himself throws in the equitable proposition that "[p]lantiff could have obtained the use of that road by contributing a share of the cost of the construction and maintenance of the road," but did not do so.

These facts are acknowledged in the opinion of Justice Bakes, and therein properly designated as "uncontroverted." Such, to my mind, simply demonstrate the heart of the controversy. Defendants acted consistently with their view that the instrument in question conferred upon them the sole right to the use of the easement roadways—even as against the plaintiff. Plaintiff's actions and contentions simply were consistent with his contrary view. While it might have been more conscionable for the plaintiff (or his predecessor-in-interest) to have contributed to the expense of construction and maintenance of the roadway transversing the easement area, *see George v. Tanner,* (Idaho 1982), it equally might have been more conscionable for the defendants to have paid considerably more than the nominal sum of $540.00 for an instrument, the legal effect of which is thereafter contended to have deprived the grantor of all future rights to the use of the easement roadway—notwithstanding that pursuant to such legal argument the grantor's property is neatly bisected and the roadway is not only of no benefit, but presumably creates a considerable detriment in value to the grantor's property. For my part, I put aside uncontroverted facts which are merely self-serving of the parties' respective contentions, and likewise put aside appellate notions of equity. I return to the ambiguity, if any, of the instrument in question, keeping in mind that a nominal sum was the consideration given in exchange for the same.

A beginning point is the language of Justice Shepard wherein he states that "[t]he owner of a servient estate which is burdened with an easement ordinarily has a

right to use the easement in the absence of an express agreement to the contrary." I endorse that view as a sound general statement of the law, and call attention to the fact that it is well fortified by supporting authority set forth in his opinion. The document in question does not contain "an express agreement to the contrary." Accordingly, then, the owner of the servient estate, here the plaintiff, "has a right to use the easement," and I am at a loss to understand the basis of Justice Shepard's dissent, unless it is his view that the uncontroverted extrinsic evidence—largely equitable considerations both pro and con—mandate that we uphold the trial court. For reasons pointed out earlier, I am not so persuaded.

Nor am I persuaded to the view of Justice Bakes that on remand following reversal a second trial should be had. Justice Donaldson "seriously questions" that the language of the easement is ambiguous. I tend toward that same view, but am necessarily tempered therein where the highest appellate court in Idaho is unable to find unanimity in the legal effect of the language used.

For certain, I agree with Justice Shepard that an instrument should contain an express agreement prohibiting the owner of the servient estate from using the easement if it is later to be held that the easement granted is solely the property of the grantee—even to the exclusion of the servient estate. Here, there is no such express agreement. At best, a very poor best, there is whatever *implication* can be drawn from the language used, but from it I find nothing which persuades me that the grantor was, in effect, conveyancing away the fee to a strip of property which divided his land into two parts, with the result that he would no longer have any right to cross over the easement area from one parcel to the other or go on to and use it for any purpose. The language, coupled with the conceded fact of the nominal consideration, is better understood as an intendment that the grantees and owners of the dominant estate were given that estate "exclusively for their use" and not at liberty to in turn let third parties use the road and easement

area unless such third parties were successors-in-interest to ownership of the dominant estate. While I tend to agree with Justice Shepard and Justice Donaldson that there is no need for any further proceedings on remand, I do not join their opinions or so vote. I concur in reversing the trial court, but would direct entry of judgment for plaintiff. The vote being as it is, it seems that the issue of a second trial will now be left open to the discretion of the trial court as was the case in *Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979).

DONALDSON, Chief Justice, dissenting.

While I agree with the majority opinion in the conclusion that an exclusive easement is an interest recognized by law, I dissent from the majority holding and disposition. The majority holds and disposes of this case by claiming that the easement is ambiguous and then remands to the trial court to make a finding of fact regarding the intention of the parties.

Assuming that the language of the easement was ambiguous, which I seriously question, I disagree with the majority position that "it appears ... that the trial court considered only the language in the instrument and held as a matter of law that the defendants had the exclusive right to use the easement." *Ante,* p. 1051. To me it is clear from the transcript and record that the trial court considered the circumstances and evidence as a whole in reaching its decision. The trial court's memorandum decision which it had ordered "constitutes the Findings of Fact and Conclusions of Law," stated that:

"In each of said easements the following language appears.

'To have and to hold the said easement and right-of-way unto the second parties, exclusively for their use, and unto their successors and assigns forever.'

"Also contained in each of said easements is a warranty of title on the part of the grantor.

"The question presented here for a decision is the extent of the use acquired by

the defendants herein as opposed to the owner of the land, that is, the plaintiffs.

"It should further be noted that these easements were acquired in 1968 for a valuable consideration; that the defendants constructed the roadway in question and for most of said period have excluded all others from the use of said road by means of chains or gates or other impediments to normal travel. Also defendants have done all the maintenance of said roadway all at considerable expense to them.

"In the case of *Reiver, et al., vs. Voshell, et al.,* (Del.) [18 Del.Ch. 260] 158 Atl. 366, the Court of Chancery of Delaware observed the following:

'... since a private right-of-way carries with it by implication only such incidents as are necessary to its reasonable enjoyment, the grant of such a right, which is *not exclusive* in its terms, and which can be reasonably enjoyed without being exclusive, leaves in the grantor the right of user in common with the grantee.'

"This language is found in 9 RCL, page 797.

'It is expressive of the general rule, the absence of the element of *exclusiveness,* it is to be noted, is essential for the continuance of the grantor's dominion as owner of the fee.' (Emphasis added.)

"In the case of *Conover, et al. vs. Atlantic City Sewage Company, et al.* [70 N.J.Law 315], 57 Atl. 897, the New Jersey Court of Errors and Appeals observed as follows:

'The opinion stated the legal rule to be that a grant of the exclusive use of lands, as it excludes the grantor from all benefit in it, is a grant of the soil itself, and not a mere easement.'

"As observed by Professor Thompson in his work on Real Property, 1961 Edition, Volume 2, Section 319 at page 40:

'A grant of the exclusive use of land is not an easement, for such a grant excludes the grantor, and is in practical effect a grant of the soil itself. So

there can be no independent easement of way in the owner of the fee. It has been held that the employment of the word "use" in a conveyance, with the intention to thereby grant and convey the entire use or dominion over the land, creates an estate in fee and not an easement. The conveyance of a strip of land in explicit terms with the restriction that it should be used for a private way is a grant in fee.'

"Various cases are cited in support of these statements.

"It would therefore appear to be the general rule that the grant of an exclusive easement in effect passes the fee simple title to the grantee; and in this case all the elements of exclusiveness are present as well as the words of conveyance and description.

"However, it is not necessary for the Court to so hold, as the defendants only contend that they acquired an exclusive easement to the exclusion of everyone, including the grantor. Under these circumstances, in the event the easement is abandoned or relinquished, it is possible that the title would revert to the grantor or his successors in interest.

"Furthermore, the nebulous character of the description of the easement across the west half of the northwest quarter of the northeast quarter of said Section 23 was cured by the reference to the attached plat as well as the fact that the road was constructed and maintained in its present location for a period of nine years prior to the time that the plaintiffs herein questioned the right of the defendants and the fact that plaintiffs had knowledge of the road's location and the instruments in question prior to the time that they entered into the agreement to purchase.

"It is therefore the Court's conclusion that the rights of the defendant to the exclusive use of the roadway to the exclusion of all others, including the plaintiffs, should be quieted and confirmed in them."

Furthermore, the plaintiff's motion to set aside the judgment was properly denied by the trial court. The affidavits of the plaintiff and his predecessor, Leischner, offered in support of a motion failed to demonstrate that the judgment should be set aside. Neither demonstrates excusable neglect nor any other reason to set aside the judgment. Plaintiff's failure to present Leischner as a witness at trial or evidence of her intention at the time the easement was granted is not excusable neglect under I.R.C.P. 60(b)(1). Appellant fails to demonstrate that his neglect is excusable. In the absence of such a showing, to remand for further findings implicitly sanctions a lawyer's second chance rule. The appropriate time to present evidence as to the grantor's intention was at trial and not after an adverse judgment.

The trial court decision should be affirmed.

SHEPARD, Justice, dissenting:

I agree with the dissent of Donaldson, J., that the motion to set aside the judgment was properly denied because of failure to demonstrate excusable neglect under I.R. C.P. 60(b)(1). Apparently the majority opinion does not disagree with that conclusion.

As noted by the majority opinion, plaintiff's predecessor in interest granted defendants an easement "exclusively for their use". Thereafter defendants, at considerable expense, constructed and maintained a road across said easement. Plaintiff could have obtained the use of that road by contributing a share of the cost of the construction and maintenance of the road, but instead, he demanded his "right" to use the road and thus gain the benefit of defendant's expenditures without any cost to himself.

The owner of a servient estate which is burdened with an easement ordinarily has a right to use the easement in the absence of an express agreement to the contrary. *Reynolds Irr. Dist. v. Sproat,* 69 Idaho 315, 206 P.2d 774 (1949); *Hackendorn v. Mahan,* 24 Del.Ch. 228, 8 A.2d 794 (1939); *Tomchak*

*v. Harris,* 54 Idaho 448, 32 P.2d 1025 (1934); *Jakobson v. Chestnut Hill Properties, Inc.,* 106 Misc.2d 918, 436 N.Y.S.2d 806 (Sup.Ct. 1981); *Titeca v. State Department of Fish, Wildlife, and Parks,* 634 P.2d 1156 (Mont. 1981); *Lindhorst v. Wright,* 616 P.2d 450 (Okl.App.1980); *George v. Coombes,* 278 Or. 3, 562 P.2d 200 (1977); *Bors v. McGowan,* 158 Neb. 790, 68 N.W.2d 596 (Neb.1955). However, an *exclusive* easement, while a somewhat unusual device, creates in its owner the free and undisturbed use of the easement for the purposes for which it was created, even as against the owner of the fee. *MGJ Corp. v. City of Houston,* 544 S.W.2d 171 (Tex.Civ.App.1976); see *MacPherson v. Smoyer,* 622 P.2d 188 (Mont. 1980).

However, the majority opinion argues that the term "exclusive" is susceptible of two interpretations, *i.e.,* it may modify *the type of use* to which the owner of the dominant tenement may put the easement, or it may limit those who may use the easement. The majority then adopts the first alternative interpretation and therein errs.

Here the granted easement is limited to right of way or roadway purposes. The owner of the dominant tenement may not use the easement for purposes other than those for which it is created. The owner of an easement has no greater right to use than is reasonably necessary to enable him to adequately and conveniently make the intended use of his way. *Coulsen v. Aberdeen-Springfield Canal Co.,* 47 Idaho 619, 277 P. 542 (1929); *Donaghey v. Croteau,* 119 N.H. 320, 401 A.2d 1081 (1979); *Jakobson v. Chestnut Hill Properties, Inc., supra.* Here the easement by operation of law prevents the owner of the easement from using the right of way for anything other than roadway purposes. Thus, under the rationale of the majority opinion, the term "exclusively" is totally superfluous, adds nothing to the easement document which is not already there, and has been effectively eliminated from the document. In my view, the majority's unsupported conclusion that the term "exclusively for their use" does not

mean "for their use exclusively," is patently erroneous.

Even assuming the correctness of the majority opinion's characterization of the term "exclusively for their use" as ambiguous, I must disagree with the majority's statement "the trial court should have considered extrinsic evidence of the circumstances and intentions of the original parties to the easement." To me at least it is clear that, as pointed out by Donaldson, J., the trial court did exactly what the majority directs, and then concluded as a matter of fact and upon the weight of the evidence, that as between the original parties to the agreement and their successors and assigns, the owners of the dominant tenement had the right to use the road to the exclusion of all others, including the owners of the servient tenement. If the term "exclusively for their use" is ambiguous, the interpretation of such ambiguous terminology is a question of fact, *Pocatello Industrial Park Co. v. Steel West, Inc.,* 101 Idaho 783, 621 P.2d 399 (1980), and it is well settled that the factual findings which are based on substantial and competent, albeit conflicting, evidence, will not be disturbed upon appeal unless clearly erroneous. *Cougar Bay Co., Inc. v. Bristol,* 100 Idaho 380, 597 P.2d 1070 (1979); *Baker v. Ore-Ida Foods, Inc.,* 95 Idaho 575, 513 P.2d 627 (1973). Here, the trial court's findings are not clearly erroneous, are clearly supported by the weight of the evidence, and in my judgment, should be upheld.

### ON REHEARING

The Court having granted a Petition for Rehearing in the above entitled matter and having heard oral argument, Justices Donaldson, Shepard and Bakes adhere to the views expressed in their prior opinions filed in the original hearing in the above entitled matter. Justice Huntley, who sat in place of former Justice Joseph J. McFadden who retired prior to the rehearing, concurs with the opinion authored by Justice Bakes.

The prior opinion of Justice Bistline is supplemented and modified by the following additional opinion.

BISTLINE, Justice, on Petition for Rehearing.

The plurality opinion authored by Justice Bakes remains unchanged, other than the second to that opinion is now Justice Huntley in the place of Justice McFadden, retired. Nothing which we have now heard at re-argument persuades me to join that opinion. The plurality continues to insist that "the trial court should have considered extrinsic evidence of the circumstances and intentions of the original parties to the easement." Justice Donaldson, on reading the same record, observes that the trial court did so—a view to which he continues to adhere. Perhaps the Court needs another appellate rule which authorizes direct inquiry of a trial court to establish such matters. And, because there is not, and because there is already an over-abundance of rules, perhaps there should be an appellate disposition which accomplishes the same purposes. My earlier opinion did so, and continues to do so. "The vote being as it is, the issue of a second trial will not be left open to the discretion of the trial court as was the case in *Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979)." In *Dinneen* the Court awarded a new trial on damages, but left it to the trial court to "determine whether a new trial should also be had on the issue of liability." *Id.* at 628, 603 P.2d 575.

In my earlier opinion it will be noted that I spoke of the $540 monetary consideration for the easement as a "nominal sum," and also of "the conceded fact of the nominal consideration." At re-argument it was pointed out, and correctly so, that nothing in the record supported those statements, which I now retract, and to that extent modify the earlier opinion.[1] That is not to

---

1. It would be a simple matter to rewrite that opinion and omit the challenged language. Although this has become the practice of the Court, I think the bench and bar would be

better served if it were discontinued. That something is to be learned by the bench and bar when the Court corrects its own errors or omissions is demonstrated by the cases some

say, however, that $540 may not be a nominal consideration for a right-of-way which the trial judge tended to view as amounting to a deeded right-of-way, rather than the easement which it was held to be and also held to be inaccessible to the owner of the servient estate. But, in 1968 it might have been nominal.

In *Reynolds Irrigation Dist. v. Sproat,* 69 Idaho 315, 206 P.2d 774 (1949), on rehearing,[2] the Court said:

> "That part of an estate not granted is reserved in the grantor. 'It is not necessary that the right of the owner of the servient tenement to occupy and use his land be expressly reserved to him; *it is reserved, unless expressly conveyed.*' 9 R.C.L. 797; 19 C.J.S. 978; *Rolens v. City of Hutchinson,* 83 Kan. 618, 112 P. 129; *Coulsen v. Aberdeen-Springfield Canal Co.,* 47 Idaho 619, 277 P. 542, 546."

> *Reynolds,* 69 Idaho at 332, 206 P.2d at 785 (emphasis added).

The grant in this case was only of a perpetual easement. In the granting clause the word "exclusively" does not appear. Only in the habendum clause does it appear. In the habendum the easement continues to be recognized as "the said easement and right of way." The habendum, according to *Black's Law Dictionary* serves primarily to further identify and perhaps limit the owners who may enjoy the grant, and the extent of the grant. *Black's* cites *New York Indians v. United States,* 170 U.S. 1, 18 S.Ct. 531, 42 L.Ed. 927 (1898). A reading of the case itself provides more clarity than does *Black's*:

> "... *where the grant is uncertain, or indefinite* concerning the estate intended to be vested in the grantee, the habendum performs the office of defining, qualifying or controlling it. Jones, Real Property § 563; Devl. Deeds, § 215."

> 18 S.Ct. at 535 (emphasis added).

Here the grant is not at all uncertain. The grant is simply of an easement for a right-of-way across the servient estate. If there is uncertainty in a granting clause, the same case teaches that the habendum "may explain, enlarge, or qualify, but cannot contradict or defeat the estate granted ...." 18 S.Ct. at 535. A grant of an easement is ordinarily not uncertain, and here there is no uncertainty whatever. Uncertainty, if any there is, creeps in only via the habendum clause, and only in that manner.

As that case points out, "The object of the habendum clause is said to be 'to set down again the name of the grantee, the estate that is to be made and *limited,* or the time that the grantee shall have in the thing granted or demised, *and to what use.*'" *Id.* 18 S.Ct. at 535 (emphasis added).

The use here, of course, was an easement which, in my view, was *limited* to the use of the grantees and their successors and assigns. I perceive, then, no conflict between the plain and unambiguous language of the granting clause and that in the habendum clause. In my first effort I ventured that the instrument's language showed an intention that the grantees were "not at liberty to in turn let third parties use the road and easement area unless such third parties were successors-in-interest" to the grantees. *New York Indians* fortifies that view. Further research was made into *Barton's Legal Thesaurus* (1980). One definition of "exclusive" is "private (not public)." P. 700. In turn, "private (not public)" includes "exclusive, ... limited ... nonofficial ... nonpublic, not open ...." P. 406. This, too, where the "exclusive" language is found only in the habendum, and not in the unambiguous granting clause, strengthens my belief that the instrument on its face did not grant a fee, and did not divest the grantors of their right to use and occupy

---

twenty or so years ago where the opinions were not simply withdrawn, discarded, and replaced.

**2.** In this case the Idaho Reports contain both the original opinion, and the petition on rehear-

ing, the latter being authored by Justice C.J. Taylor, who succeeded Justice Miller, following the original opinion. A reading of the two opinions discloses the evolution of the final opinion of the Court.

the easement area.[3] *Reynolds,* etc., *supra.* At oral argument it was suggested by respondent that the grantors had not been prevented from crossing over the road, but could not traverse its length. If this was a concession that crossing over was permissible, it would seem to present an interesting anomaly in the law.

Continuing to vote for reversing the judgment below, I further modify my prior opinion to provide the further proceedings shall be in the discretion of the trial court. If there is to be a trial, I note from the respondent's brief on the rehearing, and also at oral argument, a strong contention that in the trial court the pleadings raised no issue of ambiguity, and that there was no evidentiary trial of such an issue. In particular, mention is made of the plurality opinion's reference to the affidavit of Mrs. Leischner offered in support of a motion for a new trial, following which is added:

"[T]he writer is constrained to say that he, as the drafter of the instrument in question, would have been able and willing to testify at the first trial . . ., that it was the stated intention of Mr. Garner and the author of the document to grant the right to the use of the road exclusively to Mr. Garner, to the exclusion of all others, *including the grantor,* and this intention and the document as such was clearly explained to Mrs. Leischner, the Grantor, and concurred with by her at the time she executed the document." Respondent's Brief on Petition for Rehearing, pp. 7–8.

The first question before the trial court, however, is to determine whether this Court has held the instrument ambiguous. The plurality alone seems to so hold. I continue to see the issue as one of construction and interpretation.

---

**3.** As noted *infra,* it may have been the intent to draft and execute an easement which did exclude the grantor from any right or estate in the easement area. But, as respondent has well pointed out, this action was not to reform the instrument, but to enforce it.