OPINION OF THE COURT
Vincent R. Balletta, Jr., J.
This is an action in which the plaintiffs seek a judgment against the defendant permanently enjoining the defendant from utilizing the existing portions of Dickerson Avenue located in Bayville, New York, for the purpose of ingress and egress to certain subdivision property of the defendant, and further, a declaration that the plaintiffs have a sole and exclusive easement and utilization of Dickerson Avenue, to the exclusion of the defendant.
The answer denies the pertinent allegations of the complaint and seeks a judgment declaring: (1) that the defendant is entitled to an easement over Dickerson Avenue for the purpose of ingress and egress to Bayville Avenue; and *919 (2) that Dickerson Avenue is a public street by prescription.
The plaintiffs and the defendant are all property owners of certain land located in the Village of Bayville, New York. The plaintiffs, individually, own certain parcels on the easterly and westerly side of Dickerson Avenue, and the defendant owns 4.7 acres of property (hereinafter referred to as “Chestnut Hill”), at what is now the southerly terminus of Dickerson Avenue. There are currently 11 residences located on both the easterly and westerly side of Dickerson Avenue, and the plaintiffs herein own 6 of those residences.
By deed dated July 1, 1976, wherein Ronald and Leían Giovanelli conveyed to the defendant title to Chestnut Hill, the Giovanellis also purportedly conveyed the following to the defendant herein: “an easement for ingress and egress over Dickerson Avenue to and from the above described premises and the nearest highway.”
It is the contention of the plaintiffs that this purported easement is a nullity and that the defendant has no right to extend and use Dickerson Avenue for its own ingress and egress.
Dickerson Avenue runs generally in a north-south direction, having at its northern terminus Bayville Avenue and at its southern terminus Chestnut Hill. It runs for a distance of just under 600 feet and varies in width from 16 to 30 feet. On the trial of the action, it was stipulated that only one plaintiff, to wit, Ellen Fitzpatrick, was the owner in fee simple of any portion of the roadbed of Dickerson Avenue. Specifically, it was stipulated that plaintiff Fitzpatrick owns that rectangular portion of Dickerson Avenue abutting on her property at the southwestern intersection of Dickerson Avenue and Chestnut Hill extending for a distance of 54 feet from the southern terminus of Dickerson Avenue in a northerly direction and for approximately 15 feet easterly to the middle of the Dickerson Avenue roadbed. It is conceded by all parties that the balance of Dickerson Avenue is owned either by the Giovanellis, the grantors of the purported easement to Chestnut Hill, or by parties who have chosen not to be plaintiffs in this action. It is further conceded by the defendant that all of the plaintiffs *920 herein have an easement to travel over the roadbed of Dickerson Avenue to Bayville Avenue by virtue of an “appurtenances” clause in their respective deeds, except that plaintiff Zeller has a specific easement over Dickerson Avenue, which reads as follows: “Together with an easement or right of way unto the parties of the second part, their executors, administrators and assigns, forever, for them and their tenants, servants and licenses, in common with all other persons having the like right at all times hereafter to pass and repass over and along said private road known as Dickerson Avenue extending from a line drawn westerly across said Dickerson Avenue in continuation of the southerly line of the parcel above described northerly to Bayville Avenue.”
Plaintiffs assert several contentions as to why they are entitled to judgment in this action. Briefly stated, their contentions are as follows: (1) easement rights over Dickerson Avenue could not be passed to the defendant by the Giovanellis since the Giovanellis did not own the entire roadbed of Dickerson Avenue; (2) the easement rights granted to the parcels of property located on the east and west side of Dickerson Avenue are exclusive easements precluding the granting of an easement to any other parcel; (3) any easement rights Chestnut Hill may havé enjoyed have been cut off by application of the doctrine of adverse possession; (4) the granting of an easement to Chestnut Hill would severely overburden Dickerson Avenue; (5) the requisites for the establishment of an easement by necessity have not been shown; and (6) Dickerson Avenue is a private road and not a public street.
The defendant, on the other hand, contends that Chestnut Hill does have a valid easement over Dickerson Avenue, that the easement to be enjoyed by the property owners on Dickerson Avenue is not exclusive, and that Dickerson Avenue is a public road which the defendant has the right to travel upon.
It is clear that an easement may be granted to a dominant estate only by one who has title to the servient estate. (French Investing Co. v Jetter, 270 App Div 1048.) As regards the instant action, it is uncontroverted that the *921 southerly half of Dickerson Avenue is owned by the Giovanellis, with the exception of that parcel of the roadbed owned by plaintiff Fitzpatrick, and one other small portion of the roadbed which is owned by someone who is not a party to this action (hereinafter referred to as the “O’Reilly parcel”). Therefore, the Giovanellis could not grant any easement rights over the northerly portion of Dickerson Avenue, that portion owned by plaintiff Fitzpatrick, or the O’Reilly parcel. As regards the northerly half and the O’Reilly parcel, however, the court will not consider the effect of ownership of said parcels since the owners of said parcels have not sought to enforce any rights they may have in this proceeding. It is equally clear, however, that based upon French (supra), the Giovanellis could not grant an easement over the Fitzpatrick property since they did not have ownership of the same. The easement which they did in fact convey in their deed dated July 1, 1976 was effective only as to that portion of the southern half of Dickerson Avenue which they owned. Accordingly, if the defendant is unable in this proceeding to establish an easement right over the Fitzpatrick property, then the defendant will not be entitled to use Dickerson Avenue as a right of way based upon any express easement.
At the trial of this action, numerous deeds evidencing various conveyances of title to the real property in the roadbed and adjacent to Dickerson Avenue were introduced in evidence. Plaintiffs’ Exhibit No. 18 is a deed dated August 21, 1905 and runs between Jacob and Ettie Dickerson, as grantors, to Arthur Kimber, as grantee. The deed conveys the parcel of land now owned by plaintiff Fitzpatrick, and additionally, conveys title to that portion of Dickerson Avenue now owned by plaintiff Fitzpatrick. The deed does, however, contain one pertinent “subject to” clause which reads as follows: “subject nevertheless to the use thereof as a roadbed by other property owners, owning lands abutting on said Dickerson Avenue.”
While the court is cognizant of the fact that as a general proposition a reservation creating an easement cannot be made in favor of a stranger to a conveyance (2 Warren’s Weed, New York Law of Real Property [4th ed], Easements, § 4.02; Tuscarora Club of Millbrook v Brown, 215 *922 NY 543), in the instant action the court considers the aforementioned “subject to” clause to be an affirmative grant and not a reservation, and further, a clear expression of the intent of the grantor to create this right of way. In further distinguishing Tuscarora Club, the grant was made to a particular individual and not as appurtenant to any particular parcel of land, whereas in the instant action, the grant is being made specifically to abutting lots. Furthermore, to the extent that this decision is inconsistent with Tuscarora Club, then this court is of the opinion that the rule ought to be that a reservation or an exception granted to a stranger can, if the intent of the grantor is clear, be effective. Indeed, as is stated by the author in 88 ALR2d, page 1202: “The ultimate question is whether a deed provision in favor of a stranger, where plainly intended to create in him an interest or right in the land, may under the modern law take effect according to its terms and intent, notwithstanding a use of words of reservation or exception. Probably the answer ought to be, and eventually generally will be, in the affirmative. Support for this conclusion is found in some of the cases, and also, it seems, in the American Law Institute Restatement, Property § 1472, and in certain familiar analogies in the law of trusts and contracts. In England, the result has already been accomplished by statute.”
Additionally, this is not the first time that a court of this State has applied the overriding principle that it is the intent of the parties that shall control and has permitted an exception and reservation to run to strangers to a deed. (Maynard v Maynard, 4 Edw Ch 711.)
Accordingly, the language of the “subject to” clause is sufficient to create an easement over that portion of the Fitzpatrick property lying within the bed of Dickerson Avenue. The remaining question, however, is whether this easement runs solely in favor of the parcels on the east and west side of Dickerson Avenue, or whether it extends to Chestnut Hill as well.
At the trial of this action, it was specifically stipulated by the parties that: “the Dickerson Avenue right-of-way as laid out abuts the northerly line of the property of Chest *923 nut Hill properties. In other words, there is no hiatus between Dickerson Avenue terminus and Chestnut Hill’s property; they are in fact contiguous.”
Examining the various exhibits and maps of the subject properties and considering the stipulation of the parties, it is clear that Chestnut Hill abuts on Dickerson Avenue within the meaning of the easement created over the Fitzpatrick property. The word “abutting” has traditionally connoted the concept of contiguity. (Black’s Law Dictionary [5th ed], p 11; Homac Corp. v Sun Oil Co., 137 Misc 551.) Indeed, Corpus Juris Secundum defines the word “abutting” as: “a word of common usage, having a definite, well understood meaning, as well in legal as in common parlance. It has been defined as meaning adjacent; adjoining; coming together; contiguous; ending; joined to; meeting; touching. It has been said that it conveys the idea of bordering on, bounded by, with nothing intervening.” (1 CJS, p 406.) Furthermore, the second series of American Jurisprudence (Adjoining Landowners, vol 1, § 1) in discussing the term “abutting owners”, indicates that it “is used to designate those whose lands touch a highway or other public place”.
In the instant action, it is not disputed that Chestnut Hill is contiguous with Dickerson Avenue, albeit the end of Dickerson Avenue. The owner thereof would come within the afore-mentioned easement in the Dickerson to Kimber deed. The fact that Chestnut Hill touches and is contiguous with Dickerson Avenue at its end, rather than its side, is not crucial, since there is no requirement that a substantial portion of a parcel bound with another in order to be considered abutting. Indeed, the argument that a substantial portion of a parcel must bound with another in order to be considered abutting has been specifically rejected by the Appellate Division, Second Department, in People ex rel. New York, Westchester & Boston Ry. Co. v Waldorf (168 App Div 473). The court in Waldorf stated (p 478): “It is not essential to abutting upon a street that any entire boundary of the land should lie along or touch the street.”
Since the requisite contiguity has been found to exist between Dickerson Avenue and Chestnut Hill, Chestnut Hill is entitled to the benefit of the easement created in the *924 Dickerson to Kimber deed, and the defendant has overcome the first of plaintiffs’ objections that no valid easement rights were granted to the defendant to pass and repass over the entire length of Dickerson Avenue.
Turning to the issue of exclusivity of the plaintiffs’ rights to use Dickerson Avenue for ingress and egress, it is clear that the plaintiffs’ contentions must fail on this point also. In construing the operation and effect of any easement, the rights of the grantees, in this case the plaintiffs, will be considered not to be exclusive unless the opposite intent unequivocally appears. (3 Powell, Real Property, Easements and Licenses, § 417.) Furthermore, the extent of the use of an easement, unless another intent is apparent, will be limited only to as much as is reasonably necessary and convenient for the purpose for which the easement was created. (2 Warren’s Weed, New York Real Property, Easements, § 16.01.) An exclusive easement is an unusual interest in land and the intent to create such an easement will not be imputed unless there is strong evidence of the same. (17 NY Jur 2d, Easements and Licenses, § 33.)
In the instant action, in examining the means by which the plaintiffs herein obtained their easements, it is clear that no exclusive easement was intended. Indeed, all plaintiffs, except for plaintiff Zeller, obtained their easement rights through “appurtenance clauses” in their respective deeds, and an appurtenance clause has been held to pass only such easement rights and privileges as are strictly necessary and essential to the enjoyment of the property. (Root v Wadhams, 107 NY 384.)
With respect to the Zeller deed, the language of the easement itself refutes any concept of exclusivity when, by its own terms, it is to be shared “in common with all other persons having the like right at all times hereinafter to pass and repass”.
On the trial of this action, plaintiffs sought to attach considerable weight to certain recitals contained in a deed from Grace I. Dickerson and Margaret Dickerson to Charles Broadway Rouss, Inc. dated February 27, 1930. The particular language on which the plaintiffs sought to rely reads *925 as follows: “Whereas the parties of the first part are certain that it was the intention of their predecessors in title to lay out Dickerson Avenue in such location and manner to make it available to owners of plots abutting and intending to abut on the same as a private right-of-way to and from Bayville Avenue”.
At the conclusion of the trial, the court reserved decision as to whether this recital contained in the deed would be admissible on the subject of exclusivity. Indeed, at that time I had grave doubts as to whether this particular clause could be admitted in order to show a purported intent, and it is clear now that my doubts were well founded and that, as a matter of law, this recital may not be considered by the court in this action. While recitals as to a grantor’s intent in an ancient document, such as this deed, might be admissible to prove a grantor’s intent, such is not admissible and is violative of the hearsay rule when it is sought to prove the intent of someone other than the grantor. (Fisch, New York Evidence 2d, § 1016.)
The next roadblock which, the plaintiffs seek, to place in the defendant’s path is the construction of a fence at the southern terminus of Dickerson Avenue. There was testimony adduced at the hearing to the effect that some sort of fence had been constructed and has been in existence for many years at the southern terminus- of Dickerson Avenue. It is clear, however, that such a fence cannot cut off any of Chestnut Hill’s easement rights by-means of adverse possession since Chestnut Hill has not as yet erected or attempted to erect a right of way extending into Dickerson Avenue. The key to adverse possession is a holding out of rights adverse to the rights which are sought to be cut off, and the rule is aptly stated in Castle Assoc. v Schwartz (63 AD2d 481, 490), where the court held: “where an easement has been created but no occasion has arisen for its use, the owner of the servient tenement may fence his land and such use will not be deemed adverse to the existence of the easement until such time as (1) the need for the right of way arises, (2) a demand is made by the owner of the dominant tenement that the easement be opened and (3) the owner of the servient tenement refuses to do so.”
*926 In the instant action, since there is no evidence that Chestnut Hill needed or demanded to use the Dickerson Avenue right of way until after the property was conveyed to the defendant herein in 1976, it can hardly be said that the erection of the fence is adverse to the existence of the Chestnut Hill right of way for the statutory 10-year period.
The plaintiffs’ final argument against a declaration by this court that an easement exists is that any easement in favor of the defendant would overburden Dickerson Avenue. The proof at the trial in this action indicates that there are currently 11 homes on Dickerson Avenue, and that the proposed subdivision of Chestnut Hill would create 7 additional residences on Dickerson Avenue. It appears that the subdivision plan of Chestnut Hill meets all the applicable zoning ordinances and village requirements since the plan has been approved by the Incorporated Village of Bayville. Plaintiffs failed to offer any proof at the trial of this action which would support the claim of overburdening of the easement, and in the absence of such evidence, this final argument too must fail.
In addition to having determined that the defendant is entitled to a judgment declaring that it has an easement over Dickerson Avenue, it is also equally clear that the defendant would be entitled to a judgment by virtue of the fact that Dickerson Avenue has become a public street by prescription. Section 6-626 of the Village Law sets forth how a private road may become a public street by prescription, and states: “All lands within the village which have been used by the public as a street for ten years or more continuously, shall be a street with the same force and effect as if it had been duly laid out and recorded as such.”
In connection with this statute, however, it is important to bear in mind that mere naked use by the public of a private road will not, by virtue of that fact alone, transform a private road into a public street. (Impastato v Village of Catskill, 55 AD2d 714.) The use by the public is but one of the criteria to be considered in determining whether a road has become public pursuant to section 6-626 of the Village Law. (Impastato v Village of Catskill, supra.) In addition to finding that a road is used by the public, there must also *927 be a finding that the road has been kept in repair or taken in charge, and thus adopted by the public authorities during the period in question. (Nogard v. Strand, 38 AD2d 871; De Haan v Broad Hollow Estates, 3 AD2d 848; People v Sutherland, 252 NY 86.) In each case, a factual determination must be made by the court as to whether there is a use by the public and either a repair or a taking charge of the road by the village.
The testimony on the trial of this matter clearly indicates that Dickerson Avenue was used by members of the public as a public thoroughfare. While the plaintiffs sought to introduce certain testimony to the effect that the entrance to Dickerson Avenue contained a private road sign for many years, the plaintiffs’ proof on this point is totally insufficient, and, the court is convinced that such a sign was not erected until after the commencement of this action. Furthermore, there was no testimony whatsoever indicating that the public did not have access or was ever barred from using Dickerson Avenue. In this connection, the court notes that the Superintendent of Public Works for the Village of Bayville testified that within the entire incorporated village, there are but three miles of public roads and that there are 50 times that many private roads. The court is convinced,.on the testimony before it, that there was a general, accepted, and unrestricted use of Dickerson Avenue by the public for many years.
Turning now to the issue of whether the road was kept in repair or taken in charge of and adopted by the village, it is clear that the road was not repaired by the village, and this was conceded by both the plaintiffs and the defendant. However, the testimony of the Superintendent of Public Works of the village, as well as the testimony of the representative of the village water department, clearly indicate that the village has taken charge of Dickerson Avenue. Indeed, it is uncontroverted that the village put water mains in, established fire hydrants, regularly collected garbage and grass clippings, and provided all necessary snow removal and sanding operations during the winter months. There was also evidence that street lighting was provided for numerous years at no cost to the adjoining homeowners. *928 The facts supporting the proposition that the village has taken charge of the road are more substantial than in Nogard (38 AD2d 871, supra) where the court held that isolated instances of snow plowing and the fact that certain road machinery had been seen on the road would not satisfy the requirement of assumption of control or continuance of maintenance. In the instant action, there appears to be a continuing and well thought out plan on the part of the village to take control of Dickerson Avenue and to provide all necessary services other than the actual repairing of the street.
Accordingly, it is the judgment of this court that the plaintiffs’ complaint should in its entirety be dismissed and that the defendant is entitled to a judgment adjudging and declaring that the defendant has the right to pass over Dickerson Avenue in common with the plaintiffs.