**John J. ASZMUS and Lillian P. Aszmus, Appellants,**

v.

**Mike NELSON, Appellee.**

**No. S–1783.**

Supreme Court of Alaska.

Oct. 9, 1987.

*on Statute of Limitations,* 43 A.L.R. 3d 429 (1972).

Michael Cohn and John Hellenthal, Anchorage, for appellants.

Gordon F. Schadt, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

MOORE, Justice.

John and Lillian Aszmus sued Mike Nelson to enjoin him from blocking a right-of-way easement they claimed over his land. The Aszmuses argued that a prior deed in Nelson's chain of title created an easement in their favor because it conveyed the land "subject to" a described right-of-way. The

trial court held that, as a matter of law, the deed could not create an easement. Therefore, the court entered summary judgment in favor of Nelson. We reverse and remand for further proceedings.

## I. FACTS

Both Nelson's lot and the Aszmuses' lot were originally part of Government Lot 32, a larger tract once held by a single owner, Charles Swoboda.[1] Nelson's lot occupies the northeast corner of Lot 32. The Aszmuses' lot occupies the southeastern part of Lot 32. The lots are not adjacent.

Swoboda's estate first sold the property now owned by Nelson in 1965. Nelson acquired the land in 1977. The record does not disclose when the Aszmus lot was first separated from the original parcel; the Aszmuses acquired it in 1968.

A road along the northern boundary of Lot 32 provides access for Nelson's land. An access route, called "Swoboda Avenue," running along the east edge of Lot 32, has provided occupants of the southern portion of the lot with access to the road on the north since at least 1968. The Aszmuses and their tenants used Swoboda Avenue continuously from 1968 until Nelson blocked it off some time between 1978 and 1980. There is conflicting evidence on when and how completely Nelson blocked Swoboda Avenue.

In 1985, the Aszmuses sued Nelson to enjoin his blockage of Swoboda Avenue. The Aszmuses asserted that the original deed executed by Swoboda's estate to Nelson's first predecessor-in-interest created an easement over Nelson's land for their benefit. That deed (hereinafter called the Swoboda deed) stated that the land was sold:

> TOGETHER WITH, all and singular, the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, subject to the rights and reservations in patent to said land expressed, and subject to existing easements for power, light, and other utilities and restrictions of record and *subject to a 15 feet [sic] easement for an access roadway along the east boundary line of said Lot Thirty-two (32).* (Emphasis added.)

The Swoboda deed is in Nelson's chain of title. Subsequent deeds conveying the property to Nelson's predecessors-in-interest and to Nelson provided that the property was sold subject to easements of record.

In 1977, the Aszmuses received a quitclaim deed to a 10–foot easement along Swoboda Avenue from Edmond Bogue, Nelson's immediate predecessor-in-interest. This deed was recorded on the same day as the date of Nelson's purchase of the lot.

Nelson moved for summary judgment. He asserted that the "subject to" language of the Swoboda deed did not contain words of grant and so was ineffective to create an easement. He also argued that he had extinguished any easement by adverse possession and that the quitclaim deed for a right-of-way easement over the property given to the Aszmuses by Bogue was not within Nelson's chain of title. The trial court granted Nelson's motion and entered final judgment in favor of Nelson because it held that the Swoboda deed did not contain words of grant and so did not create an easement. The court did not decide any other issue.

The Aszmuses appeal.

## II. DISCUSSION

Summary judgment is proper only if there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Alaska R.Civ.P. 56(c); *Riley v. Northern Commercial Co.,* 648 P.2d 961, 965–66 (Alaska 1982). The trial court apparently read our opinion in *Hendrickson v. Freericks,* 620 P.2d 205 (Alaska 1980), *opinion on rehearing,* 620 P.2d 213 (1981), as establishing that a deed which conveys land "subject to" an encumbrance cannot create a reservation in favor of the grantor or an interest in a third

---

1. Lot 32 is located in Anchorage's Muldoon area within Section 13, T13N, R3W Seward Meridian.

party.[2]  Therefore, the court held that Nelson was entitled to judgment as a matter of law.

The trial court misconstrued *Hendrickson.*  In *Hendrickson,* we held that a deed which conveyed real estate "subject to" a lease did not reserve the rights of the lessor in the grantor but merely qualified the estate that the grantee received.  620 P.2d at 209.  Although the opinion discusses cases from other jurisdictions in which the words "subject to" were held not to convey an interest, the opinion concludes that "the primary factor considered by the courts in determining how these phrases are to be interpreted in the individual situation is the intent of the parties."  *Id.*  The *Hendrickson* court found that the grantor intended the deed to convey his entire interest in the property.  Thus, the case simply affirms the general rule that deeds must be read to ascertain the intent of the grantor.  *Shilts v. Young,* 567 P.2d 769, 773 (Alaska 1977).  *See generally* 6A R. Powell & P. Rohan, *The Law of Real Property* ¶ 893, at 81–110 (1980).

■  Under *Hendrickson,* the critical inquiry is whether the Swoboda estate intended to create an easement when it sold Nelson's lot.  Because the grantor's intent presents an unresolved issue of material fact, the trial court erred in entering summary judgment.

We observe that the record discloses several factors suggesting that the grantor intended to create or retain an easement.  For example, the easement provided the sole access for the southern portion of the property until 1984, when a separate public access was dedicated.[3]  Additionally, the explicit description of the easement in the Swoboda deed is unlike prophylactic clauses intended merely to protect a seller from claims for breach of deed warranties.  Typically such clauses recite simply that the property is sold subject to easements (or encumbrances) of record.  *See* M. Friedman, *Contracts and Conveyances of Real Property* § 1.2(i), at 29–30 (4th ed. 1984).  On the other hand, the easement description fails to identify the dominant estate, or even to indicate with certainty that the easement was intended to be appurtenant to an estate rather than an easement in gross.

On facts similar to those presented in this case, other courts have found that the words "subject to" in a deed do create an easement.  In *Jakobson v. Chestnut Hill Properties, Inc.,* 106 Misc.2d 918, 436 N.Y. S.2d 806, 810 (Sup.Ct.1981), a deed stated that it conveyed property including a road "subject nevertheless to the use thereof as a roadbed by other property owners, owning lands abutting on said Dickerson Avenue."  The court found that the quoted language clearly expressed the grantor's intent to create an easement, and held that the easement existed.  In *Katkish v. Pearce,* 490 A.2d 626, 627 (D.C.App.1985), the court similarly found an easement created by a deed which conveyed one of two connected houses and which stated: "but said premises are subject to a right of way through a 31¾-inch alley in the north side, for the benefit of the owners or tenants of the dwelling house No. 1210 adjoining the north side of said premises...."

■  Nelson argues that, even if the deed could create an easement by reservation to the grantor, the deed could not create an easement in favor of a third party.  This argument assumes that the Aszmus property was separated from the original parcel before the Swoboda deed was executed, so the Aszmuses did not succeed to an interest originally created in the grantor.  The record does not disclose whether this assumption is correct.  In any case, we believe the question whether a deed could create an easement in favor of a third party can be resolved as a matter of law.

Nelson's argument is based upon the common law rule that a reservation or exception in a deed cannot create rights in third parties.  *Pitman v. Sweeney,* 34

2.  The trial court's reasoning is not set forth in its written judgment nor in its oral statements upon conclusion of the proceedings on Nelson's motion for summary judgment.

3.  This public access apparently had not been developed at the time this appeal was filed.

Wash.App. 321, 661 P.2d 153, 154 (1983); *see generally* Annotation, *Reservation or Exception in Deed in Favor of Stranger,* 88 A.L.R.2d 1199, 1203–05 (1963).

The rule is based on the technical definition of the terms "reservation" and "exception." 88 A.L.R.2d at 1202. "An 'exception' exists when some part of the ownership of the grantor is never parted with, while a 'reservation' is the term applicable when the instrument transfers all that the grantor had but recreates in him some specified interest in respect to the land transferred." 6A Powell, *supra* p. 7, ¶ 887[5] at 81–73. Since a stranger to the deed had no interest in the property conveyed, common law decreed that he could have no interest to be excepted from the grant, and none from which a reservation could be carved. *Willard v. First Church of Christ, Scientist,* 7 Cal.3d 473, 102 Cal. Rptr. 739, 741, 498 P.2d 987, 989 (1972); *see* 88 A.L.R.2d at 1202. "While a reservation could theoretically vest an interest in a third party, the early common law courts vigorously rejected this possibility, apparently because they mistrusted and wished to limit conveyance by deed as a substitute for livery by seisin." *Willard,* 102 Cal. Rptr. at 741, 498 P.2d at 989. The *Willard* court termed the rule's foundation "an inapposite feudal schackle;" it found the rule in conflict with the goal of effecting the grantor's intent, and it asserted that the rule produced an inequitable result because grantees paid less for encumbered property. *Id.* Accordingly, the court rejected the rule. *Id.,* 102 Cal.Rptr. at 743, 498 P.2d at 991.

The New York Court of Appeals recently upheld the rule on the grounds that the rule protects bona fide purchasers and avoids conflicts of ownership. *Estate of Thomson v. Wade,* 69 N.Y.2d 570, 516 N.Y. S.2d 614, 509 N.E.2d 309 (1987). The court stated that, in the area of property law, " 'stability and adherence to precedent are generally more important than a better or even a 'correct' rule of law....' " *Id.,* 516 N.Y.S.2d at 615, 509 N.E.2d at 310, *quoting In re Estate of Eckart,* 39 N.Y.2d 493, 384 N.Y.S.2d 429, 432, 348 N.E.2d 905, 908 (1976). We believe the view expressed by the California court in *Willard* represents the preferred position and therefore join the other jurisdictions which have similarly rejected the rule. *See, e.g., Malloy v. Boettcher,* 334 N.W.2d 8, 9 (N.D.1983); *Medhus v. Dutter,* 184 Mont. 437, 603 P.2d 669, 673 (1979); *Garza v. Grayson,* 255 Or. 413, 467 P.2d 960 (1970); *Townsend v. Cable,* 378 S.W.2d 806 (Ky.1964). *See also* Restatement of Property § 472 comment b (1942). The rule clearly conflicts with our general view that a deed should be construed to effect the intent of the grantor. *Shilts,* 567 P.2d at 773. We find the justification for the rule articulated by the New York court unpersuasive. The rule has never been part of our case law and we perceive no policy reason for adopting it now.[4]

Therefore, even if the Aszmuses acquired their property (or it was otherwise separated from the Swoboda property) before the Swoboda deed was executed, the Swoboda deed may have effectively created an easement across the Nelson lot for the benefit of the Aszmuses' lot.

This case cannot be resolved without a factual determination as to the intent of Swoboda's estate at the time it sold the Nelson lot. Thus, summary judgment was improper. We REVERSE and REMAND for further proceedings consistent with this opinion.[5]

---

**4.** We note that in both *Katkish,* and *Jacobson* the courts effected the grantors' intent to create easements in third parties to the deeds. *Katkish,* 490 A.2d at 627; *Jacobson,* 436 N.Y.S.2d at 810.

**5.** We do not address the Aszmuses' assertion on appeal that the quitclaim deed granted them a ten-foot wide easement congruent with the fifteen-foot easement claimed under the Swoboda deed. If, on remand, the trial court finds that there was no intent to create an easement by the

Swoboda deed, then the court must determine whether the quitclaim deed created the narrow-

er easement.