John DOMINICI and Mary Dominici,
Plaintiffs–Appellants,

v.

John LENTINI, Individually and as Mayor of the Incorporated Village of North Hills, Stanley Rosenfeld, as a member of the Board of Trustees of the Incorporated Village of North Hills, Bentley M. Sherman, individually and as a member of the Board of Trustees of the Incorporated Village of North Hills, Roberta Cohen, individually and as a member of the Board of Trustees of the Incorporated Village of North Hills, and Incorporated Village of North Hills, Defendants–Appellees.

Docket No. 01–7546.

United States Court of Appeals,
Second Circuit.

Dec. 18, 2001.

Lane T. Maxson, Esq., (Judith A. Castillo, Esq., and Hamburger, Maxson & Yaffe, LLP on the brief), Melville, NY, for Appellant.

Milton Thurm, Esq., (L. Lynette Sarno, Esq. and Thurm & Heller, LLP on the brief), New York, NY, for Appellee.

Present Hon. JOHN M. WALKER, JR., Chief Judge, Hon. JACOBS, and Hon. SACK, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court be and it hereby is AFFIRMED.

Plaintiffs-appellants John and Mary Dominici (the "Dominicis") appeal from the March 26, 2001 judgment of the district court granting summary judgment to defendants-appellees, the Village of North Hills, its mayor, and the individual members of its Board of Trustees (collectively "the Village"), denying summary judgment to the Dominicis, and dismissing their claims, brought pursuant to 42 U.S.C. § 1983, for violation of their rights to due process and equal protection under the Fourteenth Amendment.

This case stems from the Village's actions in 1995 in erecting a chain-link fence across an access road (the "Road") that runs east-west and abuts the Dominicis' property. The Dominicis had been using the Road as a means of ingress and egress to their property since the State of New York (the "State") built the Road in or about 1966 after acquiring the property by eminent domain to expand the Northern State Parkway. According to a State memorandum, the Road was built "to provide access to three parcels of land which would have been otherwise landlocked" by the highway expansion, thereby "minimiz[ing] consequential damages to [those] three parcels." The Dominicis assert that it is undisputed that their land was one of the three parcels for whose benefit the Road was built. Their property, however, has never been landlocked, since they have always had a driveway south to I.U. Willets Road, which right of way was included in their deed when they purchased the property in 1964.

At various times between the time the Road was first built by the State and 1988,

fences were erected across it, presumably by either the State or the Village. A guardrail fence was placed across the Road at the westerly end, where the Road abuts the Dominicis' property, and was still in place as of 1997. A similar guardrail was placed at the easterly end of the Road, but was subsequently removed. In 1978, a wooden post-and-rail fence was placed at the easterly end of the Road where it meets Shelter Rock Road. The Dominicis continued to use the Road by driving around the wooden fence. Thereafter, the fence was lengthened, and the Dominicis were required to remove rails in the fence in order to pass through it. The wooden fence was still in place as of 1997.

Sometime prior to 1988, two parcels of land that abutted the Road were developed into condominium complexes, neither of which used the Road as a primary means of access. In 1988, title to the property on which the Road sits was transferred by the State to the Village of North Hills in fee simple. In 1995, after members of one of the condominium complexes asked that a fence be installed across the Road due to security concerns, the Village installed the chain-link fence that triggered this action. At the time this was done, all of the parcels that abut the Road had alternate means of ingress and egress to their property.

Two and a half years after the chain-link fence was installed, the Dominicis wrote a letter to the Village asking them to remove the fence and to repair and maintain the Road. Four months after the Village denied the Dominicis' request, the Dominici's filed this action seeking declaratory, injunctive, and monetary relief. After entertaining cross-motions for summary judgment, the district court denied summary judgment for the plaintiffs and granted summary judgment for the defendants, dismissing all of plaintiffs' claims.

On appeal, the Dominicis argue that: (1) the district court erred in denying their equal protection claim because the two condominiums that abut the Road have been allowed to continue to have emergency access to the Road, while the Dominicis have been denied such access; and (2) the district court erred in granting summary judgment on their procedural due process claim under the rationale of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

The Equal Protection Clause of the Fourteenth Amendment mandates that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Where an alleged violation of that mandate is not based on race, gender, religion, natural origin, or alienage, no equal protection violation will be found if the unequal treatment was rationally related to a legitimate State interest. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). The district court dismissed plaintiffs' equal protection claim on the ground that the Village had a rational basis for erecting the fence, namely its safety concerns for the abutting condominium residents. Plaintiffs do not challenge this holding. Instead, they argue that they have been denied equal protection because the two abutting condominiums have been granted emergency access to the Road, while they have been denied it. These allegations did not appear in their complaint, which only challenged the Village's decision to erect the chain-link fence. Moreover, appellants, who cross-moved for summary judgment, have offered no proof that the Village has denied them emergency access via the Road. The only support offered for this claim is appellant John Dominici's assertion in an affidavit that he

ha[s] been repeatedly told by Village officials that [he] will *never* be able to subdivide [the Dominicis'] property because the Village requires a 50 foot road to allow emergency vehicles to gain access to a proposed development, and [their] long driveway on the other side of [their] property, opposite the parkway access road, is only 20 fee[t] in width.

This allegation does not provide support for the Dominicis' equal protection claim. There is no factual showing that the Dominicis ever sought emergency access via the Road and were denied it; there is no factual showing that they ever applied for a subdivision; nor is there a factual showing that the Road is 50 feet wide (the photographs in the record show a much narrower tract). We hold that the district court properly granted summary judgment to the Village on the Dominicis' equal protection claim.

The Dominicis' procedural due process claim is premised on their assertion that the Village was obligated to provide notice and a hearing before erecting the chain-link fence across the Road pursuant to N.Y. Village Law § 6–614, which requires a Village board to give notice and a hearing to consider any resolution by the board to "discontinue" a street. Assuming for purposes of this appeal that the Village was required to provide notice and a hearing, we find that appellants' claim nevertheless fails.

A procedural due process claim cannot be maintained unless the claimant establishes that he or she has a constitutionally protected liberty or property interest at stake. *See Bd. of Regents v. Roth*, 408 U.S. 564, 569–72, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Appellants posit three ways in which they obtained a property interest in access to the Road: (1) that the Road was a dedicated public road; (2) that appellants had obtained a prescrip-

tive easement; and (3) that the Road has become public by virtue of prescriptive use by the public. In the first and third cases, plaintiffs would have an easement of access because under New York law, "one whose property abuts a public street has a right to have the street remain unobstructed and used for the public for public purposes so as not to interfere with his ingress and egress from his property." *Quaglia v. Inc. Vill. of Munsey Park*, 54 A.D.2d 434, 389 N.Y.S.2d 616, 620 (App. Div.1976), *aff'd*, 44 N.Y.2d 772, 406 N.Y.S.2d 30, 377 N.E.2d 473 (1978); *see also Regan v. Lanze*, 40 N.Y.2d 475, 482, 387 N.Y.S.2d 79, 354 N.E.2d 818 (1976) (same); *Zeid v. Kaldawi*, 147 A.D.2d 636, 538 N.Y.S.2d 42, 44 (App.Div.1989) (same).

■ The first and second grounds are plainly inapplicable here. The Road has never been dedicated as a public road. Nor could appellants have obtained a prescriptive easement against either the State or the Village, which held the land as sovereign for highway purposes. *See People v. Sys. Props., Inc.*, 2 N.Y.2d 330, 344–45, 160 N.Y.S.2d 859, 141 N.E.2d 429 (1956) (holding that there could be no acquisition of prescriptive rights against the State when it was acting as sovereign); *Lewis v. Vill. of Lyons*, 54 A.D.2d 488, 389 N.Y.S.2d 674, 676 (App.Div.1976) ("There is a well-recognized distinction between lands held by the state as sovereign, in trust for the public, and lands held as proprietor only, for the purpose of sale or other disposition ... such lands only as the state holds as a proprietor may be lost [through adverse possession]; it cannot lose such lands as it holds for the public, in trust for a public purpose, as highways, public streams, canals, public fair grounds." (internal quotation marks omitted)); *Peasley v. New York*, 102 Misc.2d 982, 424 N.Y.S.2d 995, 1001–02 (Ct.Cl.1980) ("[A]n easement by prescription could not

have been obtained over ... the lot, subsequent to its acquisition by the State ..., since the land was held by the State in its sovereign capacity."). Plaintiffs also failed to establish the remaining elements of a prescriptive easement. *See, e.g., Pirman v. Confer*, 273 N.Y. 357, 363–64, 7 N.E.2d 262 (1937) (holding that there could be no prescriptive easement where appellant's use was permissive and in common with the general public); *Tully v. Bayfront North, Ltd.*, 286 A.D.2d 873, 730 N.Y.S.2d 603, 604 (App.Div.2001) (holding a claimant must identify "some distinctive and decisive act on [his or her] or [his or her] predecessors' part indicating an exercise of exclusive right sufficient to notify the owner of the user and of the claim of right." (internal quotation marks omitted)); *Northtown, Inc. v. Vivacqua*, 272 A.D.2d 917, 708 N.Y.S.2d 221, 222 (App.Div.2000) (same); *Peck v. New York*, 15 A.D.2d 443, 224 N.Y.S.2d 758, 760–62 (App.Div.1962) (finding no prescriptive easement where appellant's use, like the general public's, was permissive).

■ With respect to the third basis for finding a property interest, we find that appellants have failed to establish that the Road had become a public one by prescription under N.Y. Village Law § 6–626, which provides that

All lands within the village which have been used by the public as a street for ten years or more continuously, shall be a street with the same force and effect as if it had been duly laid out and recorded as such.

Appellants' only asserted basis for claiming that the Road satisfied the statute is that they and their invitees used it continuously for approximately twenty-seven years to access the Dominicis' property. Case law is very clear, however, that more than just continuous use is required for a street to become public by prescription.

*See, e.g., Am. Nassau Bldg. Sys., Ltd. v. Press,* 143 A.D.2d 789, 533 N.Y.S.2d 316, 319 (App.Div.1988); *Impastato v. Vill. of Catskill,* 55 A.D.2d 714, 389 N.Y.S.2d 152, 153 (App.Div.), *aff'd,* 43 N.Y.2d 889, 403 N.Y.S.2d 497, 374 N.E.2d 394 (1976); *Jakobson v. Chestnut Hill Props., Inc.,* 106 Misc.2d 918, 436 N.Y.S.2d 806, 813 (Sup. Ct.1981).

To establish a street by prescription, it must be shown that the street has been used by the general public in the manner of a public road, not just by a property owner and its invitees. *See, e.g., Fila v. Angiolillo,* 88 A.D.2d 693, 451 N.Y.S.2d 316, 317–18 (App.Div.1982) (noting trial court's holding that there was insufficient evidence to establish a public way where dead-end street "was primarily used for access purposes by plaintiffs' predecessors in title and their invitees and not by the general public," but affirming on other grounds); *Nichols Copper Co. v. Connolly,* 208 A.D. 667, 203 N.Y.S. 839, 847 (App.Div.1924) (use must be like that of highways generally); *De Long Realty Corp. v. Levkoff,* 14 Misc.2d 715, 179 N.Y.S.2d 403, 406–07 (Sup.Ct.1958) (same, holding that evidence that dead-end street used for access by plaintiff, the occasional delivery by truck, and the parking of cars was insufficient to establish it as a public street). At the very least, it must be shown that "the public [had] access [and was never] barred from using" the street. *Am. Nassau Bldg. Sys.,* 533 N.Y.S.2d at 318 (quoting *Jakobson,* 436 N.Y.S.2d at 813); *see also Vill. of Catskill v. De Cicco,* 2 Misc.2d 942, 147 N.Y.S.2d 756, 758 (Sup. Ct.1955) (holding that alley was not public street where barriers had been erected across it at various times). The wooden fence that has barred easy access to the Road for at least nineteen years precludes such a finding.

In addition, it must be shown that "the Village has continuously maintained and repaired the alleged street, and, thus, assumed control thereof during the period of time in question." *Impastato,* 389 N.Y.S.2d at 153. "[I]solated acts of repairing" are not enough to establish adoption by a municipality. *Carman v. Hewitt,* 105 N.Y.S.2d 239, 245 (Sup.Ct. 1951). Appellants here have neither alleged nor offered evidence to show that the Village, or the State before it, continuously maintained or repaired the Road or that the Village provided any other services for the Road. *See Am. Nassau Bldg. Sys.,* 533 N.Y.S.2d at 318–19 (finding issuance of building permits, installation of street lighting, and provision of city water, sewer system, garbage removal, snow plowing, and police and fire service to be "sufficient indicia" that village authorities had exercised control despite absence of regular repair and maintenance of roadway). In short, despite the opportunity to engage in discovery, appellants have failed to raise a triable issue with respect to whether the Road had become a public street by prescription. Accordingly, they have failed to establish that they held a property interest in continued access to the Road and summary judgment was properly granted to the Village on appellants' procedural due process claim.

For the reasons set forth above, the judgment of the district court is hereby AFFIRMED.